No. 89-040

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA, ex rel.,
ROBERT ECCLESTON, KEVIN SULLIVAN
AND ELMER CARSONE,

        Relators,

    -vs-

MONTANA THIRD JUDICIAL DISTRICT COURT,
DEER LODGE COUNTY, and THE HONORABLE
TED MIZNER, Presiding District Judge,

        Respondents.

FILED
'89 NOV 22 AM 11 37
ED SMITH, CLERK
MONTANA SUPREME COURT

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Relator:

        C. Richard Anderson argued & John P. Davis; Poore, Roth
        & Robinson, Butte, Montana
        Timothy McKeon; McKeon & McKeon, Anaconda, Montana

    For Respondents:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Clay R. Smith, Solicitor, Helena
        Joseph C. Connors argued, Anaconda, Montana
        Bernard J. Everett argued; Knight, Dahood, McLean &
        Everett, Anaconda, Montana

    For Amicus Curiae:

        Bruce W. Moerer, Montana School Boards Association,
        Helena, Montana

Submitted: September 25, 1989
Decided: November 22, 1989

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This case is an original proceeding in this Court involving an application for a writ of supervisory control. The issues presented for our determination originated in Fitzpatrick v. School District No. 10, a negligence case currently before the Third Judicial District Court. Relators, defendants below, are employees of the original named defendant, School District No. 10. Relators seek relief via supervisory control from the District Court's order granting plaintiffs leave to belatedly amend their complaint to name relators as defendants in the action below. In the same order, the District Court granted summary judgment dismissing the original defendant, chairman of the board of trustees of the school district, from the action. In a subsequent order, the District Court granted defendant school district's motion to be dismissed as a party to the suit. Both dismissals were based on the immunity provisions of § 2-9-111, MCA.

At plaintiff's request, we identified the following issues for determination upon supervisory control:

1) Whether this is a proper case for this Court's consideration upon a writ of supervisory control?

2) Whether the District Court erred in granting plaintiffs leave to amend their complaint pursuant to Rule 15(c) to name the school district employees as new parties after expiration of the statute of limitations?

3) Whether § 2-9-111(2) and (3), MCA, grants immunity from tort liability to a school district and its employees for conduct by the latter admittedly within the course and scope of their employment and not involving the use of a motor vehicle, aircraft, or other means of transportation?

2

After careful consideration of these issues and the facts of this case, we conclude    this case is appropriate for determination upon the writ.  Further, we conclude that the District Court did not abuse its discretion in allowing the amendment; however, the recent case law interpreting § 2-9-111, MCA, clearly renders the relators immune from suit.

On March 4th, 1985 plaintiff Mary Fitzpatrick fell down the alley stairs leading down to the Memorial Gymnasium in Anaconda, Montana. The gym is owned by School District No. 10.  On August 26, 1987 plaintiffs Mary and Frank Fitzpatrick filed a complaint against School District No. 10 and the District's chairman of the board of trustees Ty Tyvand. The complaint alleged that defendants were negligent in failing to properly light and remove ice and snow from the stairway. Defendants filed an answer on October 7, 1987.  Pursuant to stipulation, defendants amended their Answer to plead the affirmative defense of immunity from plaintiffs' claims pursuant to § 2-9-111, MCA.  Defendants filed their amended answer more than three (3) months before the running of the statute of limitations.  On July 7, 1988, plaintiffs moved for leave to amend their complaint to name Robert Eccleston and Kevin Sullivan, the school janitors, and Elmer Carsone, the school principal, as defendants in the suit.  The motion was filed four months after running of the statute of limitations.  On July 29, 1988, the original defendants filed a motion for summary judgment based on their immunity defense.

In September 1988 the District Court dismissed Chairperson Tyvands based on § 2-9-111, MCA , but not School District No. 10.  In the same order, the court also granted plaintiffs leave to amend their complaint adding employee relators as defendants, concluding that the amendment related back to the lawsuit's filing date under Rule 15(c),

3

M.R.Civ.P., and thus was not barred by the three year statute of limitations. The relators and school district immediately moved for dismissal of the amended complaint on immunity and statute of limitations grounds. On December 19, 1988 the District Court granted the motion with respect to School District No. 10 but denied it as to relators. On January 25, 1989 relators filed the present application for writ of supervisory control. The sole issue raised in the application is whether the District Court erred in determining that the amendment related back to the original filing date.

In opposing the application, plaintiffs suggested that the relation-back issue will eventually become moot because the District Court erred in dismissing the school district on immunity grounds and because recovery against the school district will bar the claims against relators under § 2-9-305(5), MCA. Plaintiffs requested "the opportunity to fully brief the immunity issues" to avoid "piecemeal appeals" and to place the Court "in a position of rendering a decision with the benefit of all relevant facts and argument." On May 9, 1989 this Court entered an order identifying the issues listed above for oral argument.

I.

Article VII, Section 2 of the Montana Constitution gives this Court "original jurisdiction to issue, hear, and determine writs. . . ." The same section also gives us "general supervisory control over all other courts" in the State. Art. VII, Sec. 2, Mont.Const. Recently, we summarized the standards for granting a writ of supervisory control. See State ex rel. Fitzgerald v. District Court (1985), 217 Mont. 106, 114, 703 P.2d 148, 153-54. One of the functions of the writ is to control the course of litigation

4

in lower courts, where those courts are proceeding within their jurisdiction but under mistake of law by doing a gross injustice, and there is no appeal or the remedy by appeal is inadequate. State ex. rel. Shores v. District Court (1903), 27 Mont. 349, 71 P. 159; State ex. rel. Whiteside v. District Court (1900), 24 Mont. 539, 63 P. 395.

There are no written regulations or laws respecting our power of supervisory control. Rather, we have proceeded on a case-by-case basis being careful not to substitute the power of supervisory control for an appeal provided by statute. State ex rel. Reid v. District Court (1953), 126 Mont. 489, 255 P.2d 693. However, if a relator will be deprived of a fundamental right, both justice and judicial economy require us to assume jurisdiction and resolve the issue in favor of the relator. Thus, if the cause below is mired in procedural entanglements and appeal is not an adequate remedy, we will issue a writ of supervisory control. State ex rel. Levitt v. District Court (1977), 172 Mont. 12, 560 P.2d 517.

In the case at bar, the lack of any issue of material fact clearly renders this case appropriate for disposition upon summary judgment. Rule 56(c), M.R.Civ.P. The problem confronted by the District Court in this case is whether the law, specifically § 2-9-111, MCA, does in fact provide immunity to the individual employee relators, thereby entitling them to summary judgment. Determination of this question will directly bear on the propriety of the District Court's refusal to dismiss the relators and may also determine the propriety of the amendment naming relators as parties to the lawsuit below. Therefore, we conclude that a writ of supervisory control is appropriate in this case for the purpose of clarifying the law and in the interests of judicial economy.

## II.

Defendants rely primarily on Kilkenny v. Arco Marine, Inc. (9th Cir. 1986), 800 F.2d 853, in contending that the amendment adding them should not relate back under Rule 15(c), M.R.Civ.P. The Rule provides:

> Rule 15(c). Relation back of amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. . . .

Rule 15(c), M.R.Civ.P. See also Schiavone v. Fortune (1986), 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18, 27. Kilkenny holds that the extent of the information the pleader obtains respecting another as a potential defendant, after filing of the original complaint and before the limitations period expires, is relevant to whether the potential defendant knew or should have known that they would be named but for a mistake in identity. Kilkenny, 800 F.2d at 857.

The defendants point out that the Fitzpatricks had deposed and taken statements from the relators prior to expiration of the statute of limitations. Defendants argue further that plaintiffs had notice of their mistake in naming the proper parties when defendant school district amended its answer to assert the immunity defense. Relators contend that the extent of this information held by the plaintiffs caused

6

them to believe that they were not named because of strategic reasons rather than as a result of mistaken identity.

However, Kilkenny can be distinguished from the case at bar. The amended answer in Kilkenny not only alleged that the original named defendant was not a proper party to the suit; it also identified the parties who were the proper defendants to the suit. In this case defendants' amended answer merely notified plaintiffs of the possible impropriety of the school district as a defendant. The amended answer did not indicate that the relators alone might be or were in fact the proper parties to the suit. Furthermore, because the immunity issue presents a novel question under the facts of this case, plaintiffs did not know that the school district is immune from suit under § 2-9-111(2), MCA. In fact, they still contend that the district is not immune. Thus, the first time that the plaintiffs had an indication that the relator employees were the proper parties to the suit is when the District Court dismissed the school district and Chairperson Tyvands after the expiration of the statute of limitations. Thus, our determination should focus on the threshold question of whether the proposed defendants knew or should have known that but for a mistake in identity of the proper parties the suit would have been brought against them.

In this regard the defendant employees are the personification of the school district. They were deposed and involved in the litigation from the outset and cannot claim that they did not have notice of the institution of the action. Considering the obvious link between the district employees and the school district itself, and in light of the arguably unsettled immunity question presented in this case, we agree with the District Court's conclusion that:

> there was no mistake as to the identity of the
> District employees who were involved in the

7

circumstances that led to the filing of this lawsuit. However there was a mistake as to the identity of the proper parties to this lawsuit as contemplated by Section 15(c), M.R.Civ.P. . . . (Emphasis by the District Court.)

Order of December 15, 1988. The mistake in this case being related to the identity of the proper parties and the relators having ample notice of the action so as not to be prejudiced, we find no abuse of discretion by the District Court in allowing the amendment.

## III.

We now come to the determinative issue in this case requiring issuance of the writ. The issue involves the scope of the immunity granted by § 2-9-111, MCA, to a school district and its employees for torts committed within the course and scope of employment and not involving the use of a motor vehicle, aircraft, or other means of transportation. The statute provides:

> 2-9-111. Immunity from suit for legislative acts and omissions.
> (1) As used in this section: (a) the term "governmental entity" includes the state, counties, municipalities, and school districts; (b) The term "legislative body" includes the legislature . . . and any local governmental entity given legislative powers by statute, including school boards.
> (2) A governmental entity is immune from suit for an act or omission of its legislative body or a member, officer, or agent thereof.
> (3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.
> (4) The immunity provided for in this section does not extend to any tort committed by the use of a motor vehicle, aircraft, or other means of transportation.

8

Section 2-9-111, MCA.

Plaintiffs argue that the past cases construing the statute and relied upon by defendants are distinguishable from the case at bar. See e.g., Limberhand v. Big Ditch Co.(1985), 218 Mont. 132, 706 P.2d 491; W.D. Construction Inc. v. Board of County Commissioner's of Gallatin County (1985), 218 Mont. 348, 707 P.2d 1111; Bieber v. Broadwater County (Mont. 1988), 759 P.2d 145, 45 St.Rep. 1218; Peterson v. Great Falls School District No. 1 and A (Mont. 1989), 773 P.2d 316, 46 St.Rep. 880. Plaintiffs contend that Barnes and W.D. Construction can be distinguished because those cases involved clearly legislative rather than administrative functions. This contention carries no weight. Our recent decisions in Bieber and Peterson, clearly disposed of this issue. While the statute is entitled "Immunity from suit for legislative acts and omissions", we held in Peterson and Bieber that the plain meaning of the statute's actual language is much broader in that "action by the legislative body need not be legislative in nature to afford immunity." Peterson, 773 P.2d at 318. Accordingly, we decline to give credence to the plaintiffs'distinction between administrative and legislative acts "because the plain language of the statute makes no such distinction". Bieber, 759 P.2d at 147. We will not delve outside the plain meaning of the words used in a statute. W.D. Construction, 707 P.2d at 1113, Barnes v. Koepke (Mont. 1987), 736 P.2d 132, 134, 45 St.Rep. 810, 812.

Plaintiffs also contends that § 2-9-111, MCA, does not grant immunity to the relators in this case. They argue that the statute requires involvement by a legislative body, i.e. the school board, before immunity can arise. Plaintiffs concede that the school district is a governmental entity and the school board is a legislative body under subsection (1). However, plaintiffs argue that the school district, not the

9

school board, owns the gymnasium and employs the custodians and the principal. Thus, plaintiffs argue the operative provision of subsection (3) has no application to the case at bar as no member, officer, or agent of any legislative body is being sued.

We disagree. Clearly, the relators in this case are agents of the school board:

> (2) A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. (Emphasis added.)

Restatement 2d of Agency, §2. Thus, an agent includes one who performs only manual labor as a servant. Restatement 2d of Agency, §1, comment (e). The board of trustees for each school district has the power to:

> (2) Employ and dismiss administrative personnel, clerks, secretaries, teacher aides, custodians, maintenance personnel, school bus drivers, food service personnel, nurses, and any other personnel deemed necessary to carry out the various services of the district. . . . (Emphasis added).

Section 20-3-324, MCA. A school "district" is defined as:

> . . . the territory, regardless of county boundaries, organized under the provisions of this title to provide public educational services under the jurisdiction of the trustees prescribed by this title. . . . (Emphasis added).

Section 20-6-101(1), MCA. Thus, the school board is the governing body--i.e., the legislative body--of the governmental entity, the school district. The janitors cannot be said to be agents of either the board or district to the exclusion of the other. Rather, they are agents of the district as manifested by their agency with the district's governing school board. It simply does not make

10

sense to say that relators are agents of the district but not the board responsible for hiring them and governing the district and the district's employees.

Furthermore, in Bieber we construed the phrase in subsection (3) of § 2-9-111, MCA, "with the introduction and consideration of legislation or action by the legislative body" to be disjunctive. Thus, subsection (3) grants immunity to members, officers, or agents of a legislative body for "the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body." Peterson, 773 P.2d at 317-318.

Here, the omission by relators arose from the lawful discharge of an official duty associated with alleged omissions by the legislative body. A failure to take legislative action, i.e., a legislative omission, will give rise to the immunity afforded by the statute. Section 2-9-111(2), MCA. Limberhand, 706 P.2d at 498. Any alleged failure by the school district to provide sufficient funding for maintenance of the stairs and employment of additional custodians are omissions by its legislative body, the school board. The omissions of the relators occurred during the lawful discharge of duties associated with these omissions by the board. Thus, the relators are immune under subsection (3) of the statute.

Plaintiffs also contend that subsection (2) of § 2-9-111, MCA, does not grant immunity to the school district in this case. Once again, we disagree. Subsection (2) of the statute clearly affords immunity to a governmental entity "for an act or omission of its legislative body or a member, officer, or agent thereof." In the case at bar, the act complained of was an omission by agents of the school board--i.e., failure by the janitors to remove snow and

11

failure by the principal to supervise the janitors. Under the plain language of subsection (2) the school district is clearly immune for an omission by an agent of the school board. The District Court did not err in granting summary judgment to the school district on its immunity defense.

Finally, plaintiffs argue that the interpretation given the statute violates the rule that any reinstatement of governmental immunity must be strictly construed. Plaintiffs rely on B. M. v. State (1982), 200 Mont. 58, 649 P.2d 425, 33 A.L.R. 4th 1157, where we held that it is "our duty to strictly construe any attempted governmental immunity--that is, every act expanding statutory immunity must be clearly expressed." In B.M., the plaintiffs sued the State for negligence in placing a six-year old child in a special education program for educable mentally retarded children. The State was granted summary judgment based on immunity under § 2-9-111, MCA. We reversed on the grounds that the legislature had not enacted legislation to limit the liability of school boards in the administration of special education programs. We held that in the absence of a clear statutory declaration granting immunity it is this Court's duty to permit rather than to deny an action for negligence. B.M., 649 P.2d at 427.

The plain meaning of the actual language used in § 2-9-111, MCA, was not discussed in our decision in B.M. v. State. We have decided several other immunity cases since our 1982 decision in B.M. In the process, we have arrived at the current construction of § 2-9-111, MCA, on a case-by-case basis. B.M.'s rule of strict construction still holds true. However it is now clear, particularly after our decisions in Bieber and Peterson, that the plain language of the statute constitutes a clear statutory declaration granting immunity to the relators in this case.

12

Earlier in this opinion we held that the District Court did not abuse its discretion in allowing the plaintiffs to amend their complaint because of the uncertainty of the law regarding immunity. We also held that a writ of supervisory control should issue in this case in order for us to clarify the immunity question. We recognize that for us to first hold that the confusion regarding immunity requires supervisory control and then to hold that the statute clearly grants immunity to the relators may seem a bit contradictory.

In this regard, we are not asserting in this opinion that the statute is unequivocally clear at first glance. Indeed, several interpretations of § 2-9-111, MCA, have been argued in the line of cases that have come before us since the statute's adoption. However, it is this line of cases, particularly our recent decisions in Bieber and Peterson that has given a specific and reasonable interpretation to the statute based on the plain meaning of the actual language used. Moreover, this interpretation of § 2-9-111, MCA, leads us to but one conclusion: the statute grants immunity to both the school district and its individual employees in this case.

The writ is granted and the amendment naming the relators relates back to the original filing date. However, as discussed above, § 2-9-111, MCA, grants immunity to both the school district and the relators in this case. The school district already being dismissed on summary judgment, we direct the District Court to dismiss the relators based on the immunity granted by § 2-9-111, MCA.

The cause is remanded to the District Court for further proceedings consistent with this opinion.

_R. C. McDonough_
Justice

13

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

14

Justice John C. Sheehy, dissenting:


This Court, having in a line of cases needlessly and illogically enlarged governmental immunity for negligence, now marches overzealously to the ultimate nonsense: a janitor in charge of brooming off snow from the steps outside of a school gymnasium is engaged as an agent in legislative action. So say the majority.

It will be small comfort to the plaintiff Mary Fitzpatrick that the majority are marching against the swell of history, to which the law must eventually bend. The extension of governmental immunity to mere government employees who wrongfully perform or omit to perform purely mechanical duties has no root in history.

> Legal doctrines often flourish long after their raison d'etre has perished. The doctrine of sovereign immunity rests on the fictional premise that the "King can do no wrong." Even though the plot to assassinate James I in 1605, the execution of Charles I in 1649, and the Colonists' reaction to George III's stamp tax made rather clear the fictional character of the doctrine's underpinnings, British subjects found a gracious means of compelling the King to obey the law rather than simply repudiating the doctrine itself. They held his advisors and his agents responsible. (Emphasis added.)

Will v. Michigan Dept. of State Police (1989), ____ U.S. ____, 109 S.Ct. 2304, 2320-2321, 105 L.Ed.2d 45, 68-69 (Justice John Paul Stevens, dissenting).

The majority in this case have carried governmental immunity to a far greater reach than was ever extended in the severest of monarchical history. They have not only excused the king; they have excused the king's men, his feudal lords and all their vassals.

## I.

I particularly object to the contention of the majority that their interpretation of § 2-9-111, MCA, in this and earlier cases is "clear." Their interpretation is not clear. It is so unclear that they are brought to the admission that they are not asserting in this Opinion "that the statute is unequivocally clear at first glance." Using themselves as authority, the majority hold that it is now clear "that the plain language of the statute constitutes a clear statutory declaration granting immunity to the relators in this case." (Slip opinion, page 12.) They said so; ergo, it is. Let us see for ourselves whether the language is plain or the declaration is clear.

Subsection (3) of 2-9-111, MCA, provides:

(3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.

By rules of English grammar as I understand them, a member, officer or agent of a legislative body is immune if the discharge of his official duty was "associated with the introduction or consideration of legislation or action by the legislative body." The majority, by their interpretation, eliminate several words from the subsection so that they read it to say that a member, officer or agent of a legislative body is immune if the official duty is "associated . . . with action by the legislative body." The majority interpretation violates grammatical and statutory rules of construction. We are required not to insert what has been omitted or to omit what has been inserted, and when there are several provisions of particulars we are to give each such a construction as will give effect to all the provisions. Section 1-2-101, MCA. Moreover, in the construction of a statute, the

intention of the legislature is to be pursued, if possible. Section 1-2-102, MCA. Statutes in this state are to be liberally construed with a view to effect their objects and to promote justice. Section 1-2-103, MCA.

The intent of the legislature can be gleaned from the heading it used in enacting the statute: "Immunity from suit for _legislative_ _acts_ _and_ _omissions_." That heading is a part of the statute.

The meaning of § 2-9-111(3), MCA, is not plain and clear as the majority contends. Further militating against their position, as far as legislative intent is concerned, are the provisions of § 2-9-102, which state:

> _Every_ _governmental_ _entity_ is subject to liability for its torts and those of its employees acting within the scope of their employment or duties whether arising out of a governmental or proprietary function except as _specifically_ _provided_ by the legislature under Art. II, § 18, of The Constitution of the State of Montana. (Emphasis added.)

The majority, by their interpretation of § 2-9-111, MCA, have abrogated the provisions of § 2-9-102, MCA, because now under the holdings of this Court, through its majority, every substratum of state government is immune from suit for the torts of its agents, officers and employees, whether those acts are legislative or administrative, and whether governmental or proprietary.

The majority rely on their decision in Bieber v. Broadwater County (Mont. 1988), 759 P.2d 145. _Bieber_ was a case decided on briefs, without oral argument, and by less than a full court. It involved the act of a county commissioner in discharging an employee. His act was ratified by the county commission. Stretching _Bieber_ to cover a janitor who didn't scrape snow from a stairway is unsupportable.

The majority also rely upon Peterson v. Great Falls School District No. 1 (Mont. 1989), 773 P.2d 316. Here again, we have an action by an employee for wrongful discharge brought against a school district. The discharge of the employee by an administrative assistant was ratified by the school board at its next regularly scheduled meeting. I dare say that no attempt was made by School District No. 10 to ratify the non-cleaning of its sidewalks by its employees.

What is eminently clear from the foregoing is that § 2-9-111, MCA, is not itself clear. The majority have confounded it by omitting portions of the statute, by ignoring the legislative intent expressed in the heading of the statute, by abrogating § 2-9-102, MCA, which imposes liability for employee torts, and by not requiring that governmental immunity be specifically provided as required in § 2-9-102, MCA. In so holding, this Court, by its own construction, has extended governmental immunity far beyond any immunity that ever existed in Montana prior to the 1972 Montana Constitution and, now, obviously, in direct reversal of the intentions of the constitutional framers of 1972 who unequivocally abolished governmental immunity.

## II.

We have noted in the foregoing that § 2-9-102, MCA, imposes liability on governmental entities for the torts of its employees. The immunity provisions of § 2-9-111, MCA, do not speak of actions by employees but rather actions by agents. The question arises, is it legally correct to consider a janitorial employee to be an "agent" of the school district?

The majority is in error in construing § 2-9-111(2), MCA, to determine that a janitorial employee is an "agent" of the school district; and in construing § 2-9-111(3), MCA,

to determine that a janitorial employee is the "agent" of a legislative body, the school district.

The term "agency" has no meaning at all when applied to a janitorial employment.

> The term "agency" means a fiduciary relationship by which a party confides to another the management of some business to be transacted in the former's name or on his account, and by which such other assumes to do the business and render an account of it. It has also been defined as the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Thus, the term "agency," in its legal sense, always imports commercial or contractual dealings between two parties by and through the medium of another. (Emphasis added.)

3 Am.Jur.2d 509, Agency, § 1.

An employee rendering purely mechanical services is not an "agent" of the master, in the true sense of the word. Thus:

> The relationship most closely related to the master and servant relationship is, of course, that of principal and agent. Both relate to employment and express the idea of service, and both agents and servants are workers for another under expressed or implied agreement. Indeed, the law of agency is an outgrowth and expansion of the doctrine of master and servant, and it is of course true that the words "agent" and "servant" in a general sense both apply to persons in the service of another. A master is a species of principal and a servant a species of agent. As a result, the words "servant" and "agent" are often used interchangeably by the courts, and indeed, an agent employed to make contracts might also, with respect to some of his duties and activities, be a servant.

> On the other hand, the terms "agent" and "servant" are not wholly synonymous since an agent may be authorized to make contracts on behalf of the principal with third persons and to generally represent him in the business, while a mere servant has no such authority, but renders purely

- 19 -

mechanical services as directed by his employer. The essential difference between the two is that an agent represents his principal in business dealings and is employed to establish contractual relations between the principal and third persons, while a servant is not.

As a general rule, a servant is employed to perform certain acts in a way that is or may be specified, and he may not use his discretion as to the means to accomplish the end for which he is employed. This being so, the service performable by a servant for his employer may be inferior in degree to work done by an agent for his principal. (Emphasis added.)

53 Am.Jur.2d 84-85, Master and Servant, § 3.

The argument that a mere employee is not an agent in the sense of § 2-9-111, MCA, is buttressed when one examines § 2-9-305, MCA. This statute provides indemnity for employees who are sued for actionable conduct in their service of the government. The indemnity is for full cost of settlements or judgments, as well as for costs and attorney fees. As applied to the relators in this case, if this Court properly held that they were not within the immunity umbrella, they would be protected completely from pecuniary loss for suits against them arising out of their employment. The use by the legislature of the term "agents" in § 2-9-111, MCA, and the use of "employees" in § 2-9-305, MCA, shows that the legislature found a difference in their meanings as applied to the concept of immunity. I would construe the legislative intent to be that "employees" in § 2-9-305, MCA, included both employees and agents; but that "agents" in § 2-9-111, MCA, did not include merely mechanical employees holding purely perfunctory jobs not related to the formation or execution of policy in the field of jurisdiction entrusted to the governmental unit.

- 20 -

It is a perversion of the theory of principal and agent to contend that the janitorial employees were "agents" of the trustees themselves _individually_. The janitorial employees were in the service of the _district_, and not in the service of the trustees individually. Thus, trustees under § 20-3-324, MCA, outlining the power and duties of trustees for each school district, have the power and it is their duty to:

> (2) employ and dismiss administrative personnel, clerks, secretaries, teacher aides, custodians, _maintenance personnel_, school bus drivers, food service personnel, nurses, and any other personnel considered necessary to carry out the various services _of the district_ . . .. (Emphasis added.)

Having in mind then that a janitorial employee is not within the legal sense an "agent" of the school district, immunity does not accrue to the _school district_ under § 2-9-111, MCA, which grants immunity only as follows:

> (2) A governmental entity is immune from suit for an act or omission of its legislative body or a member, officer, or _agent_ thereof. (Emphasis added.)

Because the janitor is not an agent of the school district, but rather its mere employee, immunity does not apply to the school district in this case.

Now let us consider what is meant by "action by the legislative body."

Section 2-9-111, MCA, grants immunity to the _members_ of the school board under the following language:

> (3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.

From what we have said above, it is obvious that a janitorial employee is not an agent of a legislative body, but rather is an employee of the district, and as such,

- 21 -

immunity does not attach to the members of the district by reason of acts of the janitorial employees. In my judgment, we do not have a question of immunity as far as the school district trustees are concerned, but rather whether they are simply not subject to liability because the acts of the janitorial employees were not imputable to the individual school district trustees, but rather to the district which employed them. We do not, when private corporate employees are negligent, impute that negligence personally to the president of the corporation; only to the entity of the corporation.

However, since they were employed by the school district, the theory seized upon by some is that the work of the janitors is "an official duty" associated with "action by the legislative body." Section 2-9-111, MCA. That cannot be under the statutes.

The only way that school trustees can "act" is to act collectively, and at a regular or properly called special meeting.

Section 20-3-301(2), MCA, provides:

> The trustees shall be composed of the number of trustee positions prescribed for a district by 20-3-341 and 20-3-351. When exercising the power and performing the duties of trustees, the members shall act collectively, and only at a regular or a properly called special meeting. (Emphasis added.)

Section 20-3-301, MCA, stating that members can only act collectively and at their regular meetings must be read in pari materia with § 2-9-111, MCA, which says that the individual members are immune for "action by the legislative body." The actions of a janitor in maintaining or failing to maintain school premises have no relation to the actions taken by the legislative body in its regular or special meetings and, since the trustees may only act collectively

- 22 -

and not otherwise, § 2-9-111, MCA, cannot be read to extend immunity on the very wispy basis that a janitor cleaning off steps to a gym is involved in "action by the legislative body." That contention is simply ridiculous.

Both of the statutes, § 2-9-111, MCA, and § 20-3-301, MCA, must also be read in pari materia with § 20-3-332, MCA, which provides as follows:

> Personal immunity and liability of trustees. (1) When acting in their official capacity at a regular or special meeting of the board or a committee thereof, the trustees of each district are individually immune from exemplary and punitive damages. (Emphasis added.)

The "action" of the board trustees can only occur at regular or special meetings and it is only at such meetings that they have an official capacity. Again this statute is a further indication that the legislative immunity granted in § 2-9-111, MCA, to members and agents was never comprehended to grant immunity to school districts for the non-legislative wrongful acts or omissions of the janitorial employees.

### III.

There is a sardonic element in this case. The real party in interest shouting "governmental immunity" is probably an insurer. It sold a policy to the school district, promising coverage for comprehensive liability. Because of this Court, the insurer was never at risk for any wrongful acts of the school district personnel outside of motor vehicles. Its premium is pure gravy. In more enlightened former days in Montana, we had statutes which required insurers of state and sub-state risks to waive the defense of immunity. (Former § 40-4401, R.C.M. (1947); former § 33-23-101, MCA). In order to provide a better business climate for insurers, the Montana legislature repealed this requirement in 1979 (Ch. 425, § 4, Laws of

1979; the repealer was contained in S.B. 380, introduced by Senators Hafferman, Towe and Turnage).

The line of cases by which this Court has extended governmental immunity to cover any and all acts of the governmental entities (except for the state itself) and their various members, officers, agents and employees, is such a reversal of history and sound legal thought that it boggles the imagination. We should have begun, in this case, to pick up the pieces. There are problems in defining the duties of school board trustees as they are outlined in the statutes; and in defining the relation of mere mechanical personnel to the school boards as legislative bodies. We should restructure legislative immunity in this state so as not to comprehend and include merely administrative functions. That is how I would decide this case.

_____
                 Justice

Justice William E. Hunt, Sr., dissenting:

I dissent. I concur generally with the foregoing dissent of Justice Sheehy and in particular with what he has to say about the case of Bieber v. Broadwater County (Mont. 1988), 759 P.2d 145. As the author of that case, I can not believe it has been used as the seminal case to destroy immunity provided by the Montana Constitution, but if the effect leads to this conclusion, then I vote to overrule the case in its entirety. To extend the act of a County Commissioner performing in his capacity as a Commissioner/legislator whose act was ratified by the legislative body to which he belonged, to a snow-shoveling janitor's failure to protect the public by maintaining sidewalks in a safe condition is, as Justice Sheehy too mildly said, "unsupportable." I say it is ludicrous and unbelievable.

_William E. Hunt, Sr._
Justice