No.   90-182

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

MELISSA HEDGES, a minor by and through PATRICIA HEDGES, her Gaurdian ad Litem,

Plaintiff and Appellant,

-vs-

SWAN LAKE AND SALMON PRAIRIE SCHOOL DISTRICT NO. 73; CAROL FIELD, and DOES 1 AND 10,

Defendants and Respondents.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

H. James Oleson argued; Oleson Law Firm, Missoula, Montana.

For Respondent:

Todd A. Hammer argued; Warden, Christiansen, Johnson & Berg, Kalispell, Montana.

Submitted:   May 9, 1991

Decided:   May 23, 1991

Filed:

FILED

MAY 23 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff, Melissa Hedges, was injured on school grounds during school hours. She brought suit against the School District and the teacher who was in charge at the time of the accident. The District Court granted defendants' motion for summary judgment based on immunity under § 2-9-111, MCA, and held that such immunity could not be waived by the purchase of liability insurance. Plaintiff appeals. We affirm in part and reverse in part.

There are two issues raised on appeal:

1. Whether the School District and the teacher are immune under § 2-9-111, MCA.

2. Whether the purchase of liability insurance by the School District waives immunity under § 2-9-111, MCA.

In 1987 twelve year-old Melissa Hedges (Ms. Hedges) was a student at the Swan Lake Elementary School in Lake County, Montana. Respondent, Carol Field (Ms. Field), a teacher, was supervising the playground and had instructed Ms. Hedges to mark where shot puts landed. Ms. Hedges was marking a previous shot put when she was struck by another shot put which had been thrown by Ms. Field. Ms. Hedges was in clear view of Ms. Field at the time in question. Ms. Hedges was injured and this lawsuit resulted.

Defendants moved for summary judgment on the grounds of immunity under § 2-9-111, MCA. The matter was presented on oral argument to the District Court. The parties also argued the issue of whether immunity had been waived by the defendants' purchase of

2

liability insurance. The School District had purchased comprehensive liability insurance coverage. The District Court granted defendants' motion for summary judgment and held the defendants were immune under § 2-9-111, MCA, and that the purchase of liability insurance did not waive immunity. Ms. Hedges appeals that decision.

I

Whether the School District and the teacher are immune under § 2-9-111, MCA.

Section 2-9-111, MCA, provides (in part):

(1)  As used in this section:
(a)  the term "governmental entity" includes . . . school districts;
(b)  the term "legislative body" includes . . . any local governmental entity given legislative powers by statute, including school boards.
(2)  A governmental entity is immune from suit for an act or omission of its legislative body or a member, officer, or agent thereof.
(3)  A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.
. . .

Ms. Hedges concedes that the School District is a governmental entity as defined in the statute, and that the School Board is the legislative body, of the School District. However, she contends that despite its immunity from suit, the School District remains liable for the torts of Ms. Field, who is not immunized from suit, pursuant to § 2-9-201, et seq., MCA, the Comprehensive State Insurance Plan, which requires joinder of the School District and renders it liable to defend and indemnify Ms. Field for any damages

3

awarded. Ms. Hedges maintains that Ms. Field's discharge of duties was not "associated with" action of a legislative body as required by the language of § 2-9-111(3), MCA, and thus she is not immune. Ms. Hedges contends there is no connection between Ms. Field's conduct and any action by the School Board.

Defendants maintain that under this Court's holdings in State ex rel. Eccleston v. Montana Third Judicial Dist. Ct. (1989), 240 Mont. 44, 783 P.2d 363, and cases therein cited, the School District and the teacher are immune from liability.

Our decision in Crowell v. School Dist. No. 7 (Mont. 1991), 805 P.2d 522, 48 St.Rep. 81, is controlling. Crowell, also involved a school teacher. Crowell held that the governmental entity, the school district, was immune from suit for an act or omission of its agent, and that the physical education teacher was its agent. As a result Crowell concluded that the school district was immune from suit for the actual omissions of its teacher agent. Crowell further held that the teacher was immune under § 2-9-111, MCA, stating:

> We conclude that any negligence on the part of [the teacher] was associated with action by the School District in that it was the District which established programs and curriculum, including the specific course of instruction and which offered physical education classes as a part of such instruction. We agree with the conclusion of the District Court that the claim for damages arose from the lawful discharge by Mr. Allen of an official duty associated with actions of the School District and its legislative body. We hold that Mr. Allen, the physical education teacher, is immune from suit under § 2-9-111, MCA. (Emphasis added).

Crowell, 805 P.2d at 524. We find no factual or legal distinction between Crowell and the present case.

4

We hold that both the School District and the teacher are immune from suit under § 2-9-111, MCA.

## II

Whether the purchase of liability insurance by the School District waives immunity under § 2-9-111, MCA.

In Crowell we held that the purchase by the school district of liability insurance waives its immunity to the extent of the coverage granted by the pertinent insurance policies. After an extensive review of Montana legislative history and case law, Crowell concluded:

> We emphasize that Montana's statutory provisions are unique. We conclude that the Montana Legislature has reached the following conclusion: while a school district is granted immunity of various types, a school district still is granted authority to purchase insurance which may have the effect of waiver of immunity to the extent of the insurance proceeds. We do not find it necessary to imply a waiver, as the intention of the Legislature is clear. That intention is reemphasized by its authorization of tax levies sufficient to pay for insurance premiums. That intention is consistent with the legislative theory that a claim against a school district should be paid in a manner similar to payment required of a private party. We conclude that the Legislature has declared its intent to allow a school district to waive immunity to the extent of the insurance proceeds.

Crowell, 805 P.2d at 533.

We conclude that the Crowell holding cannot be distinguished factually or legally from the present case. We therefore hold that the purchase by the School District of liability insurance waived its immunity to the extent of the coverage granted by pertinent insurance policies.

We remand this case to the District Court for a determination

5

of the applicable insurance coverage and for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice Terry N. Trieweiler concurring in part and dissenting in part.

This case is an example of how far this Court has come by blindly following precedent--no matter how tortured and defective the reasoning on which that precedent is based. The statute intended to protect public employees during activities associated with the introduction of legislation or action of the legislative body, now protects teachers who hit students in the head with 12 pound steel balls while supervising track practice. The legislature's effort to enable local governments to protect themselves against the liability provided for in Art. II, § 18, of the Montana Constitution, is now construed to be a waiver of immunity that the legislature never created in the first place.

This incredible decision is just the most recent example of this Court's disregard for the Constitution, traditional rules of statutory construction, and the plain language of the statutes which are being construed.

And toward what end is such blatant judicial activism directed?

The result of today's case, and the precedent, which according to the majority, compels today's conclusion, is to protect wrongdoers and ignore innocent victims, even when they are 12-year-old children who sustain brain damage by the gross negligence of the adults under whose supervision they have been

7

placed. (Unless, of course, the employer of the wrongdoer chooses to waive this generous protection.)

More significant than the poor legal reasoning which has brought us to this point is the fact that it has been carved into Montana's common law for a bad social purpose. Hopefully this dark age for Montana jurisprudence which began with Peterson v. Great Falls School Dist. No. 1, 237 Mont. 376, 773 P.2d 316 (1989), will soon be brought to a merciful end by the intervention of the Montana Legislature.

I concur with the result of the majority opinion. Based upon this Court's decision in Crowell v. School Dist. No. 7 of Gallatin County, 805 P.2d 522, 48 St.Rep. 81 (1991), I agree that this case should be remanded to the District Court for further proceedings consistent with that opinion. However, I disagree with the reasoning of the Crowell decision. It is clear to me that the legislature did not authorize the waiver of immunity when it authorized local governments to purchase insurance. It authorized local governments to purchase insurance because it never did create the kind of local governmental immunity that has been found to exist by this Court.

I dissent from that part of the majority's opinion which holds that § 2-9-111, MCA, clearly and unambiguously provides immunity to Carol Field for the acts complained of by the plaintiff.

Senate Bill No. 43, which was introduced in the 45th Legislature in 1977, became what is now § 2-9-111, MCA.

8

That bill also included amendments to § 2-9-102, MCA, and enacted § 2-9-112, MCA (granting judicial immunity); § 2-9-113, MCA (granting gubernatorial immunity); and § 2-9-114, MCA (granting immunity to local executives). It was entitled:

> AN ACT TO SPECIFICALLY PROVIDE THE STATE, COUNTIES, TOWNS, AND ALL OTHER LOCAL GOVERNMENT ENTITIES AND THE OFFICERS, AGENTS, AND EMPLOYEES OF THOSE ENTITIES IMMUNITY FROM SUIT FOR INJURY TO A PERSON OR PROPERTY IN CERTAIN CASES IN ACCORDANCE WITH THE PROVISIONS OF ARTICLE II, SECTION 18 OF THE CONSTITUTION OF THE STATE OF MONTANA; AMENDING SECTION 82-4310, R.C.M. 1947.

(Emphasis added.)

It is significant that the bill's title indicated to other legislators that immunity was being granted in only "certain cases," not in all cases, because Art. V, § 11(3), of the Constitution of Montana, provides:

> Each bill . . . shall contain only one subject, clearly expressed in its title. If any subject is embraced in any act and is not expressed in the title, only so much of the act not so expressed is void.

Furthermore, the title of that bill is important in determining the intent of the legislature when § 2-9-111 was enacted. Section 1-2-102, MCA, requires that the intent of the legislature is to be pursued if possible.

With those requirements in mind, § 2-9-111, MCA, must be considered in the context of the other forms of governmental immunity which were authorized by the same Senate Bill No. 43.

9

Under § 2-9-112, MCA, a member or an agent of the judiciary is only immune from suit for damages arising from the duties associated with judicial actions.

Under § 2-9-113, MCA, the state and governor are only immune from suit for actions involving vetoing or approving bills or calling the legislature into session.

Under § 2-9-114, MCA, a local government or its executive officers are only immune from suit where activities are associated with vetoing or approving ordinances or other legislative acts or calling the legislative body into session.

It is clear from reading these sections in combination with each other that what the legislature had in mind was to immunize legislators, judges, and executives for activities related to the enactment of laws. To interpret those sections in that fashion would also be consistent with Senate Bill No. 43's title, which indicated that it was providing for local governmental immunity in "certain cases,"--not in all cases. The legislators who voted for that bill must be shocked by the manner in which it has been applied by this Court.

Section 2-9-111(2), MCA, provides that the governmental entity itself is immune from suit for the acts or omissions of its members, officers, or agents. The immunity provided for in that section appears to be very broad. However, the legislature saw fit to distinguish the circumstances under which immunity could be provided to the members, officers, or agents of the legislative

10

body in their individual capacities.  In subsection (3), the legislature provided:

> A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.

It is obvious from any reasonable interpretation of these two sections that liability of individual governmental employees is granted on a much more limited basis than liability for the government itself.  If not, it would have been a simple matter for the legislature to provide in subsection (2) that "a governmental entity <u>and its employees</u> are immune from suit from an act or omission of its legislative body, or a member, officer, or agent thereof."  The legislature chose not to do that.  Therefore, this Court should not do so.

In his concurring opinion to <u>Crowell v. School Dist. No. 7</u>, Chief Justice J. A. Turnage correctly points out that:

> "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."  Section 1-2-101, MCA.  This is the rule of law governing statutory construction, and it is an appropriate and proper rule.  There is no place for individual preference or desire to become the rule of law when the Court interprets statutory language.

I agree with Chief Justice Turnage's conclusion regarding the proper role of this Court.  However, I disagree that this Court has adhered to that rule of statutory construction when interpreting § 2-9-111, MCA.  If it did, it could certainly not have concluded

11

that when a teacher throws a 12 pound steel ball and hits a student under her supervision on the head, that teacher's act was "the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body."

The result in this decision, furthermore, violates the rule of construction recognized by this Court in B.M. v. State, 200 Mont. 58, 649 P.2d 425 (1982), where we held that every act of the legislature expanding statutory immunity must be clearly expressed.

In discussing § 2-9-111, MCA, this Court, in Eccleston v. Dist. Court, 240 Mont. 44, 54, 783 P.2d 363, 369 (1989), stated:

> [W]e are not asserting in this opinion that the statute is unequivocally clear at first glance. Indeed, several interpretations of § 2-9-111, MCA, have been argued in the line of cases that have come before us since the statute's adoption.

I would suggest that if the legislature's intent to expand governmental immunity was not clear at first glance, then according to all appropriate rules of construction, this Court had no business taking a second look. This Court's recent line of decisions granting total immunity to local governments has not only turned traditional rules of construction upside down, but has had the same impact on the human values that used to be reflected in our law.

I would reverse the District Court by holding that § 2-9-111(3), MCA, does not grant immunity to the defendant, Carol Field,

in this case, and to the extent that any previous decision is inconsistent with that holding, I would reverse that decision.

_____
Justice

We concur in the foregoing concurrence and dissent of Justice Trieweiler.

_____

_____
Justices

13