**Michael FASTOW, Plaintiff and Appellant,**

v.

**BURLEIGH COUNTY WATER RESOURCE DISTRICT, f/k/a Burleigh County Water Management District; the Bismarck Park District, Defendants and Appellees.**

Civ. No. 11424.

Supreme Court of North Dakota.

Nov. 19, 1987.

Lundberg, Nodland, Lucas & Schulz, Bismarck, for plaintiff and appellant; argued by Thomas A. Dickson.

Zuger & Bucklin, Bismarck, for defendant and appellee Burleigh County Water Resource Dist.; argued by Brenda Lynn Blazer.

Pearce & Durick, Bismarck, for defendant and appellee Bismarck Park Dist.; argued by Joel W. Gilbertson.

ERICKSTAD, Chief Justice.

Michael Fastow appeals from a summary judgment dismissing his action against the Burleigh County Water Resource District (Water District) and partially dismissing his action against the Bismarck Park District (Park District). We reverse and remand.

McDowell Dam is a man-made recreation area located in Burleigh County. It is owned by the Water District and leased to the Park District, which provides for the management, operation, and maintenance of the facility. All expenses for those functions are paid by the Water District, which retains the right to approve or

amend the proposed annual operation and maintenance budget for the facility.

While swimming at McDowell Dam on July 15, 1984, Fastow dove into the water within the designated swimming area and injured his spinal cord, rendering him a quadriplegic. Fastow has alleged various grounds upon which he asserts the Water District and the Park District are liable for his injuries. Fastow asserts that the defendants breached their duty to provide proper and adequate lifeguard protection, to maintain and provide adequate first-aid facilities and equipment, to provide for prompt telephone communication with medical and law enforcement authorities, to provide proper and adequate warnings of the dangers inherent in diving, to provide adequate inspection of the swimming area to keep it free of foreign objects, and to provide adequately trained employees and adequate supervision. Fastow also asserts that specific employees of the Park District and the Water District, who were responsible for the management and supervision of McDowell Dam, caused his injuries by having "failed to properly supervise, manage, and provide adequate facilities...."

Upon motions by the defendants the district court entered a partial summary judgment of dismissal accompanied by a Rule 54(b), N.D.R.Civ.P., certification. Construing North Dakota's Recreational Use Statute, Chapter 53–08, N.D.C.C., together with Chapter 32–12.1, N.D.C.C., the trial court determined that, as a matter of law, Fastow has no cause of action against the Water District and that Fastow has a cause of action against the Park District only under his allegations of employee negligence. The trial court also determined that each defendant has a statutory liability limit in this case of $250,000.

Determination of the following issues are necessary to resolve this case on appeal:

(1) Whether or not Chapter 53–08, N.D.C.C., which limits liability of recreational landowners, is applicable to political subdivisions; and

(2) Whether or not a political subdivision waives its governmental immunity to the extent of purchased insurance coverage.

▇ Chapter 53–08, N.D.C.C., limits the liability of landowners for injuries sustained by recreational users who are permitted to enter and use the land without charge. The statute precludes landowner liability for ordinary negligence. Fastow asserts that the trial court erred in concluding that the limitation of liability afforded by Chapter 53–08, N.D.C.C., is applicable to political subdivisions, and more specifically, to the Water District and the Park District in this case.

Fastow asserts that the legislative intent in enacting Chapter 53–08, N.D.C.C., was to encourage private landowners to make their property available to the public for recreational use. He further asserts that the Legislature did not intend application of the statute to political subdivisions because in 1965, the year in which the statute was enacted, political subdivisions enjoyed governmental immunity from liability in all civil actions and therefore had no need for the liability protection afforded by the statute. A number of authorities construing recreational use statutes similar to Chapter 53–08, N.D.C.C., have concluded that they are inapplicable to and do not provide liability limitations for governmental entities. *See, e.g., Hovet v. City of Bagley*, 325 N.W.2d 813 (Minn.1982); *Ferres v. City of New Rochelle*, 68 N.Y.2d 446, 510 N.Y.S.2d 57, 502 N.E.2d 972 (1986); *Borgen v. Ford Pitt Museum Associates, Inc.*, 83 Pa. Commw. 207, 477 A.2d 36 (1984). However, we agree with the trial court that in this state the interpretation and application of Chapter 32–12.1, N.D.C.C., relating to political subdivision liability, is dispositive of the issue and requires application of Chapter 53–08, N.D.C.C., to political subdivisions.

Chapter 53–08, N.D.C.C., does not expressly exclude political subdivisions from the protection it affords owners of recreational land, but, as Fastow correctly asserts, at the time of the statute's enactment political subdivisions enjoyed governmental immunity from civil actions. Subsequently, in *Kitto v. Minot Park District,*

224 N.W.2d 795 (N.D.1974), this court abolished the doctrine of governmental immunity for political subdivisions in this state, declaring them subject to suit for damages to individuals injured by the negligent or wrongful acts or omissions of their agents and employees. We applied our decision in *Kitto* to the parties in that case, but we expressly delayed future application of the *Kitto* decision to cases arising fifteen days or more after the adjournment of the next legislative session to allow the Legislature an opportunity to enact legislation on the subject. In apparent response to the *Kitto* decision the Legislature enacted Chapter 32–12.1, N.D.C.C., of which subsection 32–12.1–03(1), N.D.C.C., is particularly relevant to the issue before us:

> "1. Each political subdivision shall be liable for money damages for injuries when the injuries are proximately caused by the negligence or wrongful act or omission of any employee acting within the scope of the employee's employment or office under circumstances where the employee would be personally liable to a claimant in accordance with the laws of this state, or injury caused from some condition or use of tangible property, real or personal, under circumstances where the political subdivision, if a private person, would be liable to the claimant."

Under the foregoing provision a political subdivision is liable for injury caused from a condition or use of real property only under those circumstances in which a private person would be liable for such injury. We believe that this provision unambiguously makes the liability protections of Chapter 53–08, N.D.C.C., applicable to political subdivisions in the same manner and under the same circumstances as those protections are applicable to a private owner of recreational land. This interpretation is supported by interpretations of similar provisions by other courts. *See Umpleby v. United States*, 806 F.2d 812 (8th Cir.1986); *Gard v. United States*, 594 F.2d 1230 (9th Cir.1979); *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981).

In *Umpleby, supra*, the Eighth Circuit Court of Appeals held that our Recreational Use Statute, Chapter 53–08, N.D.C.C., is applicable to the United States Army Corps of Engineers by virtue of the Federal Tort Claims Act, 28 U.S.C. Section 2671 *et seq.* (1982), (FTCA):

> "Under the FTCA the United States is liable for tort claims 'in the same manner and to the same extent as a private individual under like circumstances....' 28 U.S.C. § 2674. '[T]he test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred.' *Rayonier v. United States*, 352 U.S. 315, 319, [77 S.Ct. 374, 376, 1 L.Ed.2d 354] (1957). Applying this test, the liability of the Corps is limited by the North Dakota Recreational Use Statute [Chapter 53–08, N.D. C.C.] to the same extent as the liability of a private citizen." 806 F.2d at 815.

Similar language under subsection 32–12.1–03(1), in like manner makes Chapter 53–08, N.D.C.C., applicable to political subdivisions, limiting their liability to the same extent as that of a private citizen.

We agree with the following rationale of the Nebraska Supreme Court in *Watson, supra*, underlying its interpretation of similar statutory provisions:

> "The Legislature, in enacting the Political Subdivisions Tort Claims Act and thereby declaring a political subdivision responsible for its torts in the same manner as a private individual, is presumed to have knowledge of previous legislation, including the Recreation Liability Act.... Having placed no limitation upon this declaration or upon the definition of 'owner' in the Recreation Liability Act, we believe that the intent of the Legislature, as reflected by the clear language of both statutes, was to grant the same rights and privileges to governmental and private landowners alike." 312 N.W.2d at 259. (Citation omitted.)

We conclude that the trial court did not err in determining that Chapter 53–08,

N.D.C.C., is applicable to political subdivisions.

The trial court determined that subsection 32–12.1–03(1), N.D.C.C., provides two separate and independent grounds upon which a political subdivision can be held liable for injuries: (1) a political subdivision can be liable for injuries caused by some condition or use of property in the same manner as a private person, and (2) a political subdivision can be liable for injuries caused by the negligence or wrongful act or omission of an employee acting within the scope of the employee's employment.

We believe the trial court correctly construed subsection 32–12.1–03(1), N.D.C.C., as creating two separate grounds upon which a political subdivision can be held liable for injuries. Nevertheless, where as in this case injuries are sustained by a nonpaying recreational user, Chapter 53–08, N.D.C.C., precludes liability against the political subdivision for ordinary acts of negligence by its employees which relate to the condition of the property. *See, Wirth v. Ehly,* 93 Wis.2d 433, 287 N.W.2d 140 (1980). Unless the political subdivision, through its employees, has committed a "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity on the property," the political subdivision is not liable for injuries to a nonpaying recreational user of the property. *See, Stokka v. Cass County Electric Cooperative, Inc.,* 373 N.W.2d 911 (N.D.1985).

Subsection 32–12.1–03(1), N.D.C.C., which we have construed in this opinion as making the liability protections afforded by Chapter 53–08, N.D.C.C., applicable to political subdivisions, has in effect created a limited governmental immunity for political subdivisions to the extent of the liability protections afforded under Chapter 53–08, N.D.C.C. However, under subsection 32–12.1–05, N.D.C.C., the defense of governmental immunity is waived when a political subdivision purchases liability insurance coverage. Thus, when a political subdivision has such insurance coverage the liability protections afforded under Chapter 53–08, N.D.C.C., are inapplicable.

It is undisputed that the Park District has purchased liability insurance coverage of $500,000 and that the Water District has purchased such insurance in the amount of $1,000,000. Fastow asserts that these political subdivisions have waived their governmental immunity to the extent of their purchased liability insurance coverage.

The following statutory provisions are relevant to our determination of this issue:

"*32–12.1–03. Liability of political subdivisions—Limitations.*

    \*      \*      \*      \*      \*      \*

"2. The liability of political subdivisions under this chapter is limited to a total of two hundered fifty thousand dollars per person and five hundred thousand dollars for injury to three or more persons during any single occurrence regardless of the number of political subdivisions, or employees of such political subdivisions, which are involved in that occurrence. In no event may a political subdivision be held liable, or be ordered to indemnify an employee held liable, for punitive or exemplary damages.

    \*      \*      \*      \*      \*      \*

"5. Nothing contained in this chapter shall be construed to obligate political subdivisions for an amount which is more than the limitations upon liability imposed by this chapter...."

"*32–12.1–05. Liability insurance policy coverage.* An insurance policy or insurance contract purchased by a political subdivision pursuant to this chapter may provide coverage for liabilities established by this chapter and may provide such additional coverage as the governing body of the political subdivision determines to be appropriate. The insurer may not assert the defense of governmental immunity, but this chapter confers no right upon a claimant to sue an insurer directly...."

In construing a statute the legislative intent must be derived from the entire statute by comparing each part together and making every effort to give meaning-

ful effect to each part without rendering one or the other useless. *State v. Mees,* 272 N.W.2d 61 (N.D.1978). Every word, clause and sentence used in a statute is to be given meaning and effect. *Garner Public School v. Golden Valley County Committee,* 334 N.W.2d 665 (N.D.1983).

Subsection 2 of Section 32–12.1–03, N.D.C.C., unambiguously limits political subdivision liability to $250,000 per person and $500,000 per occurrence. Subsection 5 of Section 32–12.1–03, N.D.C.C., reinforces those limitations by stating that the political subdivision liability statute is not to be construed to obligate political subdivisions for an amount greater than those limitations. We believe those provisions can be construed in harmony with Section 32–12.1–05, N.D.C.C., which authorizes a political subdivision to purchase liability insurance in excess of that which is necessary to cover the political subdivision liability established by the statute.

If a political subdivision has no liability insurance coverage its exposure for liabilities established by the chapter is limited to $250,000 per person and $500,000 per occurrence. If, however, a political subdivision purchases insurance coverage in excess of those amounts, an injured plaintiff may receive judgment in the amount of the insurance coverage. However, the political subdivision is obligated to pay no more than the $250,000/$500,000 limits, and execution against the political subdivision to satisfy the judgment cannot exceed those amounts. Satisfaction of the judgment for amounts in excess of those limits can be accomplished only by levy and execution upon the insurance proceeds. By constru-

ing the statutory provisions in this manner a political subdivision's liability exposure is limited as envisioned by the statute, but the full extent of purchased insurance coverage is available to satisfy judgments entered against a political subdivision.

The trial court's denial of the Park District's motion for summary judgment dismissal of Fastow's claim of employee negligence is neither appealable nor subject to review on this appeal. *Herzog v. Yuill,* 399 N.W.2d 287 (N.D.1987). However, Fastow's claim against the Park District is based upon the same allegations of employee negligence as was his claim against the Water District. Consequently, the reasoning we have applied to the claim against the Water District must necessarily apply to the claim against the Park District.

Accordingly, we hold that the trial court erred in entering a summary judgment dismissal of Fastow's claim against the Water District and partial dismissal of Fastow's claim against the Park District. For the reasons stated in this opinion we reverse and remand for further proceedings. Costs on appeal are awarded to Fastow.

GIERKE, VANDE WALLE and LEVINE, JJ., concur.

MESCHKE, J., concurs in the result.