No. 90-189

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

TERRY LYNN CROWELL,

      Plaintiff and Appellant,

  -v-

SCHOOL DISTRICT NO. 7 OF GALLATIN
COUNTY, MONTANA, a political
subdivision of the State of Montana;
KEITH CHAMBERS; LOU GAPPMAYER; and
DAVE ALLEN,

      Defendants and Respondent.

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Monte D. Beck; Beck Law Offices; Bozeman, Montana

      For Respondent:

      Gig A. Tollefsen; Berg, Lilly, Stokes, Andriolo,
Tollefsen & Schraudner; Bozeman, Montana

**FILED**

JAN 25 1991

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted:  October 16, 1990

Decided:  January 25, 1991

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff, Terry Lynn Crowell (Ms. Crowell), brought this negligence action against School District No. 7 of Gallatin County, Montana (School District), and her physical education teacher, Dave Allen (Mr. Allen), to recover damages for her injuries sustained during a high school gym class. The District Court for the Eighteenth Judicial District, Gallatin County, granted defendants' motion for summary judgment on the grounds that they were immune from suit. From that decision, plaintiff appeals. After oral argument we reverse and remand.

The issues for our review are:

1. Are the School District and the physical education teacher immune from suit under § 2-9-111, MCA?

2. If the School District and the physical education teacher are immune from suit, did the School District's purchase of liability insurance waive its immunity?

On March 1, 1984, Ms. Crowell, was injured during her physical education class while attempting to perform a gymnastics routine taught by Mr. Allen. As part of the class, Ms. Crowell was required to perform compulsory gymnastic exercises including parallel bars, high bars, rings, balance beam and vault. The class was divided into several groups of approximately six students per group. Each group went to various stations to try different gymnastic maneuvers.

During the ring exercise, Ms. Crowell was instructed to attempt a maneuver called a "straddle-cut dismount" or a "straddle-

2

leg cut-off". The maneuver required that Ms. Crowell, while hanging from the rings, rapidly swing her legs forward above her head. Ms. Crowell did not complete the maneuver because she was unable to generate enough momentum to propel her through the maneuver. As her legs swung over her head, she released her grip on the rings and fell on the mat, landing on her shoulders and neck and was injured.

Ms. Crowell was unsupervised during the maneuver. Mr. Allen did not spot or otherwise assist in the performance of the maneuver. While Mr. Allen had assigned students with the duty to spot for each other, no student actually spotted for Ms. Crowell during the maneuver.

The School District purchased a comprehensive liability insurance policy covering the period from July 1, 1983, through July 1, 1986. The policy specifically covered high school premises, teachers, and physical training instructors.

Ms. Crowell filed suit against the School District and also the teacher, Mr. Allen. In addition the superintendent and the principal were named as defendants but later were dismissed. Defendants School District and Mr. Allen filed a motion for summary judgment contending they were immune from suit under State ex rel. Eccleston v. Montana Third Judicial Dist. Court (1989), 240 Mont. 44, 783 P.2d 363. Ms. Crowell argued that even if the School District and its employees were immune, the purchase of comprehensive liability insurance waived that immunity.

The District Court granted summary judgment for the defendants

concluding they were immune under Eccleston; Peterson v. Great Falls School Dist. No. 1 and A (1989), 237 Mont. 376, 773 P.2d 316; and Miller v. Fallon County (1989), 240 Mont. 241, 783 P.2d 419. From that decision, Ms. Crowell appeals.

I

Are the School District and the physical education teacher immune from suit under § 2-9-111, MCA?

Ms. Crowell contends that neither defendant is part of the "school board", and as a result are not part of the legislative body. She therefore maintains the defendants are not immune under § 2-9-111, MCA. Defendants maintain they are immune from suit under Eccleston.

In pertinent part § 2-9-111, MCA states:

> 2-9-111. Immunity from suit for legislative acts and omissions. (1) As used in this section:
> (a) the term "governmental entity" includes . . . school districts;
> (b) the term "legislative body" includes . . . any local governmental entity given legislative powers by statute, including school boards.
> (2) A governmental entity is immune from suit for an act or omission of its legislative body or a member, officer, or agent thereof.
> (3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with . . . action by the legislative body. (Emphasis added).

Peterson was an action brought by a custodian against a school district. In that case we stated:

> Comparing the Bieber case with the facts in this case, we find the only differences are that the governmental entity in this case is a school board, rather than the county commissioners, and that the party performing the act is an agent/employee of the legislative body, rather than a member. The statute clearly extends immunity coverage to school districts, to the school boards

governing those school districts <u>and to agents of those</u> <u>school boards</u>. (Emphasis added.)

. . .

<u>Peterson</u>, 773 P.2d at 318. <u>Eccleston</u> also involved a school district, its school board, and custodians. In that case the argument was made that no member, officer or agent of any legislative body was being sued. On that issue <u>Eccleston</u> stated:

. . . Clearly, the relators in this case are agents of the school board:
(2) A <u>servant is an agent</u> employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. (Emphasis added.)
Restatement 2d of Agency, § 2.

<u>Eccleston</u>, 783 P.2d at 368. <u>Eccleston</u> concluded that the school board is the "legislative body" of the school district. As a result the school district was immune.

In determining that the janitor was immune, <u>Eccleston</u> concluded that the janitor was an agent of the legislative body and that his failure to clear ice and snow from the sidewalk arose from the lawful discharge of his custodial duties. At that point <u>Eccleston</u> had determined that the custodian was an agent of the legislative body and that his actions arose from a lawful discharge of an official duty, as set forth in § 2-9-111(3), MCA. On the question of whether the official duty was associated with action by the legislative body, <u>Eccleston</u> held that the omission by the school district was the failure to provide funding for maintenance of the stairs and employment of custodians. <u>Eccleston</u> therefore concluded that both the school district and janitor were immune

5

under § 2-9-111, MCA.

In applying the foregoing holdings to the present case, we must also consider § 20-4-201, MCA, which covers the employment of teachers and states in pertinent part:

> (1) The Trustees of any district shall have the authority to employ any person as a teacher . . . Each teacher . . . shall be employed under written contract, and each contract . . . shall be authorized by a proper resolution of the trustees . . .

The duties on the part of a teacher are summarized in § 20-4-301, MCA:

> (1) Any teacher under contract with a district shall:
> (a) conform to and enforce the laws, board of public education policies, and the policies of the trustees of the district;
> (b) utilize the course of instruction prescribed by the trustees;
> . . .

Section 2-9-111(2), MCA, provides that a governmental entity, here the School District, is immune from suit for an act or omission of its agent. Under the foregoing statutes the physical education teacher is an agent of the School District. As a result we hold that the School District is immune from suit for the acts or omissions of Mr. Allen, its agent.

Acting under the above code sections, the School District hired Mr. Allen as a physical education teacher under contract, and he was required to utilize the course of instruction prescribed by the School District. Mr. Allen allegedly failed to supervise or otherwise protect the plaintiff during his discharge of duties as a physical education teacher under the course of instruction prescribed by the School District. We conclude that any negligence

6

on the part of Mr. Allen was associated with action by the School District in that it was the District which established programs and curriculum, including the specific course of instruction and which offered physical education classes as a part of such instruction. We agree with the conclusion of the District Court that the claim for damages arose from the lawful discharge by Mr. Allen of an official duty associated with actions of the School District and its legislative body. We hold that Mr. Allen, the physical education teacher, is immune from suit under § 2-9-111, MCA.

## II

If the School District and the physical education teacher are immune from suit, did the School District's purchase of liability insurance waive it's immunity?

Ms. Crowell maintains that the purchase of liability insurance by the School District waived immunity. She maintains that the immunity section must be viewed in light of the other sections of the Code that provide for insurance coverage and payment of claims against governmental entities and subdivisions. She points out that the School District's insurance policy specifically endorsed coverage for physical education teachers for all school related activities. The School District and Mr. Allen maintain there is absolute immunity under § 2-9-111, MCA.

Whether the purchase of insurance waives immunity is a question of first impression in Montana under the 1972 Constitution of Montana. Many other states have considered the issue. In a footnote at the conclusion of this opinion we will list a number

7

of the cases on both sides of the question of waiver of immunity. While the statutes of the different states vary in many particulars, a majority of the states which have addressed the issue have concluded that the purchase of liability insurance does waive immunity to some degree. As background for our consideration of the issue, we will review the holdings of a number of states.

In Fastow v. Burleigh County Water Resource Dist. (N.D. 1987), 415 N.W.2d 505, plaintiff was rendered a quadriplegic when he dove into a swimming area at a recreation area owned by the water district and leased to the park district in Burleigh County, North Dakota. He brought suit against both districts on various claims of negligence. Sovereign immunity was abolished in North Dakota in 1974. The North Dakota Legislature later enacted § 32-12.1-03(1), N.D.C.C.:

> 1. Each political subdivision shall be liable for money damages for injuries when the injuries are proximately caused by the <u>negligence or wrongful act or omission of any employee acting within the scope of the employee's employment</u> or office under circumstances where the employee would be personally liable to a claimant in accordance with the laws of this state, or injury caused from some condition or use of tangible property, real or personal, under circumstances <u>where the political subdivision, if a private person, would be liable to the claimant</u>. (Emphasis added).

The underlined portions of the North Dakota statute used language similar to that used in the Montana definition of "claim" in § 2-9-101(1), MCA. The North Dakota Court concluded under another statute there was a waiver of the defense of governmental immunity when the political subdivision purchased liability insurance coverage. Because of the statutory limitations in North Dakota,

8

*Fastow* limited recovery to $250,000 per person and $500,000 per occurrence. *Fastow*, 415 N.W.2d at 510.

In Kee v. State Highway Admin. (Md.Ct.Spec.App. 1986), 513 A.2d 930, the court reviewed the development of governmental immunity in Maryland. Prior to 1981, *Kee* pointed out that a Maryland case had concluded that any changes in sovereign immunity must be made by the legislature, stating in pertinent part:

> Quite apart from our prior decisions, it is desirable and in the public interest that any change in the doctrine of sovereign immunity should come from the legislative branch of the state Government rather than from the judicial branch inasmuch as there are fiscal considerations, administrative difficulties and other problems in balancing the rights of the State and its agencies with new possible rights of the individual citizens, which can far better be considered and resolved by the legislative branch than by the judiciary of the State.

*Kee*, 513 A.2d at 932. *Kee* pointed out that a result of the doctrine was that an individual citizen was barred from compensation even though injured by the government's wrongdoing. In 1981, Maryland enacted statutes which allowed waiver of state immunity to the extent and amount of insurance coverage. The statutes also contained a limitation as to individual claims in excess of $100,000 in aggregate claims and in excess of $500,000 per occurrence. Punitive damages were eliminated. The Maryland court emphasized that the intent of the legislature was to insure that injured parties have a remedy.

In North Carolina, the Court of Appeals held that although the board of education is a governmental agency and therefore immune from tort or negligence action, the immunity may be waived

9

if the local board of education uses its permissive authority and purchases liability insurance. The court stated that the "primary purpose of the statute is to encourage local school boards to waive immunity by obtaining insurance protection while, at the same time, giving such boards the discretion to determine whether and to what extent to waive immunity". Beatty v. Charlotte-Mecklenburg Bd. of Educ. (N.C.Ct.App. 1990), 394 S.E.2d 242.

In Antiporek v. Village of Hillside (Ill. 1986), 499 N.E.2d 1307, the Illinois Supreme Court emphasized that tort immunity is intended to protect governmental funds, stating:

> Tort immunity is intended to protect governmental funds, assuring that they will be directed and used for governmental purposes. If, however, the municipality decides to protect individuals against its negligent conduct by acquiring commercial insurance, the immunity is waived since government funds are no longer in jeopardy and immunity would inure to the benefit of private investors who have assumed the risk of insurers.

Antiporek, 499 N.E.2d at 1308.

Oklahoma cases demonstrate a progression of change. Earlier Oklahoma cases had concluded that as a sovereignty, Oklahoma was immune from suit for torts of any of its officers unless it had effectively consented to be sued. A 1972 case emphasized that the public right of governmental immunity must not be relinquished or conveyed away by "reference or construction." State ex rel. Dep't. of Highways v. McKnight (Okla. 1972), 496 P.2d 775. A significant change occurred in Schrom v. Oklahoma Indus. Dev. (Okla. 1975), 536 P.2d 904. Schrom sued the parks department for injuries sustained. That department had purchased liability insurance pursuant to legislative authority. The Schrom court stated the issue as: If

10

a department purchases liability insurance pursuant to legislative authority, must the legislature expressly waive governmental immunity before an action may be maintained? The Schrom court held:

> . . . legislative authority for a department to purchase liability insurance must be construed to include a consent to be sued and a waiver of governmental immunity to the extent of the insurance coverage only.
> We hold that where a department . . . purchases liability insurance pursuant to Legislative authority, the State has consented to be sued and waived its governmental immunity to the extent of the insurance coverage only. In reaching this conclusion, we specifically modify, to the extent herein set forth, our holding . . . wherein we, in effect, said the right of the sovereign state to immunity from suit is a public right and must not be relinquished or conveyed away by reference or construction . . . (Citations omitted.)

The effect of Schrom was to reverse the earlier holding that sovereign immunity should not be relinquished by reference or construction.

Herweg v. Bd. of Educ. of Lawton Pub. Schools (Okla. 1983), 673 P.2d 154, contains an interesting analysis of the thinking in Oklahoma behind the waiver of immunity when insurance is purchased. The Herweg court stated:

> The defense of sovereign immunity is based in part on the risk of successful plaintiffs depleting the resources of the State at the expense of tax revenues. Liability insurance changes this situation. If the political subdivision has obtained insurance coverage, there is a fund independent of the agency's assets upon which the insured plaintiff may draw. "Otherwise, the insurer would reap the benefits of the premiums paid without being obligated to pay any damages for which the department was insured." Schrom . . . 536 P.2d 904, 907 (1975).
> As specifically held in Lamont, a political subdivision such as a school district waives its immunity to the extent of coverage. (Emphasis supplied.)

11

<u>Herweg</u>, 673 P.2d at 156.

In Kentucky, no statute expressly "waives" immunity. However, the Supreme Court has held that the purchase of liability insurance impliedly waives immunity. In Green River Health Dep't. v. Wigginton (Ky. 1989), 764 S.W.2d 475, the court reasoned that:

> [W]here there is a statute authorizing a county or other state agency otherwise immune to purchase liability insurance for the protection of the public, the effect of such statute is to permit suit against the county or state agency to determine and measure the liability of the insurance carrier. . . . Both statutes are permissive. Both statutes envision expenditure of public funds to establish a source for the payment of claims [either to purchase liability insurance or by self-insurance]. Neither statute contains an **express** waiver of governmental immunity. Neither statute makes the Board [agency] liable for the torts of its agents or employees but both permit the Board [agency] to be sued and both permit payment from funds as limited by the statute if a judgment is obtained.

<u>Green River Health Dep't.</u>, 764 S.W.2d at 476.

The viewpoint of the state of Oregon is set forth in Espinosa v. Southern Pacific Transportation Co. and School District No. 40 (Or. 1981), 635 P.2d 638. In concluding that the purchase of insurance waived immunity to the extent of the coverage, the Oregon court stated:

> We held that the purchase of insurance pursuant to this statute waived the total immunity from liability in tort that the district would otherwise have.
>
> " . . . we think that the legislature intended to provide that the district's immunity would be lifted to the extent, and only to the extent that its activities were in fact covered by insurance as authorized by the statute . . .
>
> " . . . [W]e hold that a school district which does not purchase liability insurance is immune from liability; and that its immunity is lifted only to the extent that

12

it is authorized to purchase and in fact has obtained insurance covering the activity or activities in question."

Espinosa, 635 P.2d at 641.

In Smith Plumbing Co. v. Aetna Cas. & Sur. Co. (Ariz. 1986), 720 P.2d 499, the Arizona Supreme Court, in the course of discussing the question of immunity with regard to White Mountain Apache Tribe made the following statement:

> . . . The Tribe may choose to waive its sovereign immunity . . . [b]ecause the Tribe has the power either to insist upon or to waive its sovereign immunity, that immunity is considered a personal defense not available to the Tribe's surety . . .
>
> The sovereign immunity doctrine originates in social policy designed to protect the State "from burdensome interference with the performance of its governmental functions . . ." The compensated surety of a sovereign does not perform the governmental functions that require protection; therefore, the protections a government needs to conduct its functions do not extend to the surety. Furthermore, to allow a compensated surety such as Aetna to assert its principal's sovereign immunity and so avoid payment on a bond would be to provide a windfall to the surety . . . If Aetna were allowed this defense, it would receive valuable consideration in the form of compensation . . . without assuming the risk of payment.

Smith Plumbing Co., 720 P.2d at 502

Not all the states which faced this issue have waived immunity. In Hinchey v. Ogden, 397 S.E.2d 891 (Va. 1983), a plaintiff sued for injuries on a state owned and operated expressway. The Supreme Court concluded that the state did not waive sovereign immunity when it elected to protect itself with liability insurance. In reaching this conclusion, the court stated:

> . . . Selective authority in other jurisdictions for the proposition that a state waives sovereign immunity when

13

it elects to protect a governmental function with liability insurance. Our research discloses that courts in other states are sharply divided on the question, and because of the diversity of constitutional and statutory provisions among the states, it is difficult to ascertain the majority view. See Annot. 71 A.L.R.3rd 6 (1976). In Virginia, however, "waiver is an _intentional relinquishment of a known right_" . . . and there can be no waiver of _sovereign immunity by implication_. (Emphasis added.)

Hinchey, 307 S.E.2d at 895.

The foregoing review of other state authority demonstrates that it is not possible to reach a specific conclusion from those decisions. That review does demonstrate that it is essential to carefully analyze the pertinent Montana statutes.

## III

We have concluded that it is essential to review in some detail the legislative history in Montana as there have been significant changes which require consideration. For convenience we will refer to the statutes by year of enactment.

### 1959

Chapter 286 of the Montana Session Laws of 1959 stated in its title that it was an act to provide a comprehensive revision, consolidation and classification of the laws of the State of Montana relating to insurance and to the insurance business. The significant portion for our purposes was § 411 of the Act, subsequently codified as § 40-4401, R.C.M. (1947), and later codified as § 33-23-101, MCA. In substance that section provided that all policies of casualty insurance covering state risks must contain an agreement on the part of the insurer waiving all right to raise the defense of sovereign immunity and providing that no

14

premium should be paid unless the policy contained such an agreement. As later described, this provision was both amended and ultimately repealed.

## 1972

In this year, the new Montana Constitution was adopted. It eliminated governmental immunity under Article II, Section 18, which read:

> The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property.

This constitutional section waived all immunity from suit on the part of the State and its governmental entities.

## 1973

In 1973, the Legislature passed the "Montana Comprehensive State Insurance Plan and Torts Claim Act", § 82-4310, R.C.M. (1947). In brief, this Act defined "claim" in a manner similar to the definition presently in effect in Montana. In substance a claim was defined as meaning a claim against a governmental entity for money damages which a person would be legally entitled to recover if the governmental entity were a private person. It provided that the Department of Administration would be responsible for the acquisition and administration of all insurance of the State. All political subdivisions were given authority to procure insurance. Every policy of insurance was required to provide casualty and liability limits up to "not less than $1,000,000 in any one occurrence." It also provided that political subdivisions had authority to levy an annual property tax to pay the premium for

15

insurance. Every governmental entity was liable for its torts and those of its employees acting within the scope of their employment. Recovery against a governmental entity constituted a bar to recovery against the employee for the same cause of action. Governmental entities "shall not be liable for punitive damages, attorney's fees or interest on any claim." In the event no insurance had been procured, the statute required that the claim or judgment be paid from the next appropriation of the state instrumentality whose tortious conduct gave rise to the claim. It also provided that the political subdivision should levy and collect a tax in an amount necessary to pay a claim or judgment where there was a failure to purchase insurance.

**1974**

Senate Joint Resolution 64 was submitted to the qualified electors of Montana as a proposal to amend Article II, Section 18 of the Montana Constitution to read as follows:

> **Section 18. State subject to suit.** The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, <u>except as may be specifically provided by law by a 2/3 vote of each house of the legislature.</u> (Emphasis added.)

We have underscored the addition. The referendum vote adopted the constitutional change. As a result, in 1974 we have the stated conclusion of the people of Montana that as to the State and other local governmental entities, immunity could be established by a 2/3 vote of each house of the Legislature. As described in other states, this followed a trend to reduce the unlimited liability of the state and governmental entities.

16

## 1976

The Legislative Subcommittee on the Judiciary made an extensive Interim Study entitled <u>Limitations on the Waiver of Sovereign Immunity</u>, 29 (1976). That study was recognized and reaffirmed by § 2-9-106, MCA (1983).

The Interim Study reviewed sovereign immunity in various states and also the statutes of various states. The Study analyzed various methods of insurance for the State and other governmental entities. In conclusion the Interim Study proposed specific legislation covering aspects of immunity, and also significant revisions in the statutes covering insurance, including liability insurance. A majority of the statutory recommendations were adopted by the next Legislature.

## 1977

The Legislature adopted Chapter 189 which granted immunity from suit for injury to person or property in specified circumstances. Chapter 189 contained essentially the same immunity sections as presently contained in §§ 2-9-111, -112, -113, and -114, MCA (1989). Section 2-9-111, MCA, established that a governmental entity is immune from suit for acts or omissions of its legislative body, or a member, officer, or agent, and also for such members, officers, and agents under certain defined circumstances; but also provided that immunity did not extend to a tort committed by use of a motor vehicle, aircraft or other means of transportation. The following sections referred to immunity on the part of the State and the judiciary for acts or omissions of

the judiciary; immunity on the part of the State and Governor for certain actions; and immunity on the part of a local governmental entity and elected executive officers for the lawful discharge of certain duties.

In addition, the chapter provided that the State and political subdivisions were not liable for non-economic damages, for economic damages in excess of $300,000 for each claimant and $1,000,000 for each occurrence; and provided the governing body of a political subdivision may authorize payments for non-economic damages or economic damages in excess of the above sum.

Chapter 234 also amended the above described § 40-4401, R.C.M. (1947). The amendment provided that all contracts of casualty insurance covering state-owned properties or risks must contain an agreement waiving all right to raise the defense of immunity from suit. Section 40-4402, R.C.M. (1947), was also amended to provide that when an insurer accepts a premium from the political subdivision, for casualty or liability insurance, neither the insured nor the insurer may raise the defense of immunity from suit.

Chapter 360 made various amendments to the insurance sections. The chapter provided that every governmental entity is subject to liability for its torts and those of its employees except as specifically provided by the Legislature under Article II, Section 18 of the Constitution. The time for filing claims was also changed to provide that a claim is subject to the limitation of actions provided by law. Chapter 360 also provided that the State

and other governmental entities are immune from exemplary and punitive damages. Last the chapter stated that a political subdivision could satisfy a final judgment out of funds available from insurance, general fund, property tax, and proceeds from the sale of bonds. These provisions are substantially identical to the 1989 MCA and will be discussed later.

## 1979

By Chapter 425, the Legislature eliminated § 40-4401, R.C.M. (1947), in order to "revise certain laws relating to casualty insurance and immunity to make the law consistent with limits set by statute." The statute did then enact what is now § 20-3-331, MCA, which provided that the trustees of any district may purchase insurance coverage for the district, trustees and employees against liability. If the insurance is purchased, the trustees shall pay the insurance premium cost from the general fund.

## 1983

The Legislature enacted Chapter 675 which revised the limits of recovery in tort suits against the State and local governments. The Legislature made extensive findings which were codified in § 2-9-106, MCA (1983). These findings stated that the Legislature recognizes and reaffirms the report of the Subcommittee on Judiciary, as previously mentioned, which provided that unlimited liability of the State and local governments for civil damages makes it increasingly difficult, if not impossible, for governments to purchase adequate insurance coverage at reasonable costs. The findings pointed out that the Legislature found that the

19

obligations imposed on governmental entities must be performed, and these responsibilities included the confining, housing and rehabilitation of persons convicted of criminal activity; treatment and supervision of mental patients; planning, construction and maintenance of highways; operation of municipal transportation systems and airports; operation and maintenance of schools, playgrounds and athletic facilities. The Legislature further pointed out that there are many functions and services of government which because of the size of governmental operations and the inherent nature of the functions, entail a potential for civil liability far beyond the potential for parties in the private sector. Nonetheless, the Legislature concluded that these functions were necessary components of modern life. The Legislature further found that liability for damages resulting from tortious conduct by a government or its employees is more than a cost of doing business and has an effect upon government far beyond a simple reduction in governmental revenues. It concluded that unlimited liability would result in increased taxes to pay judgments and would eventually have the effect of reallocating State resources. The Legislature concluded that the potential results of unlimited liability for tort damages were unacceptable and, considering the realities of modern government and the litigiousness of our society, there is no practical way of completely preventing tortious injury and tort damages. The Legislature also adopted new limits of liability of $300,000 for each claimant and $1,000,000 for each occurrence.

**1986**

By Chapter 22 of the special session of June 1986, the Legislature provided that neither the State nor any political subdivision is liable for tort actions for damages in excess of $750,000 for each claim and $1,500,000 for each occurrence. It also provided that no insurer is liable for excess damages unless such insurer specifically agrees by written statement to provide coverage in amounts in excess of the limitations stated in this section.

IV

The foregoing gives some of the background of the adoption of the various code sections pertaining to immunity, insurance and payment of claims. We emphasize that the 1976 Interim Study of the Legislative Subcommittee on the Judiciary reviewed immunity and insurance and included proposed legislation covering aspects of both immunity and revisions of the existing statutes covering liability insurance and other types of insurance. After our consideration of that Interim Study and the various amendments in subsequent years, we conclude that the Montana Legislature has consistently considered together all questions relating to immunity and questions relating to insurance. In some statutes there is a constant reference to both insurance and immunity. We therefore conclude that we must analyze together all of the 1989 Montana Codes Annotated which pertain to both immunity and insurance for our purposes. These code sections are contained in Title 2, Chapter 9, MCA (1989), and are divided into Part 1 - Liability

Exposure, Part 2 - Comprehensive State Insurance Plan, and Part 3 -

Claims and Actions.  We refer to the 1989 Montana Codes Annotated

unless otherwise stated.

Part 1 - Liability Exposure

Section 2-9-101, contains a definition of "claim" which has

remained essentially unchanged since enactment in 1959.  In

pertinent part § 2-9-101, provides:

> (1)  "Claim" means any claim against a governmental entity, for money damages only, which any person is legally entitled to recover as damages because of personal injury or property damage caused by a negligent or wrongful act or omission committed by any employee of the governmental entity while acting within the scope of his employment, <u>under circumstances where the governmental entity, if a private person, would be liable</u> to the claimant for such damages under the laws of the state. (Emphasis added).

> . . .

> (4)  "Personal injury" means any . . . bodily injury . . . sustained by any person and caused by an occurrence for which the state may be held liable.

Section 2-9-102, provides that every governmental entity is

subject to liability for its torts and those of its employees

acting within the scope of their employment except as specifically

provided by the Legislature under Article II, Section 18, of the

Montana Constitution.

Section 2-9-105, continues to provide that the State and other

governmental entities are immune from exemplary and punitive

damages.

Section 2-9-108, provides that neither the State nor any

political subdivision is liable for damages in excess of $750,000

for each claim and $1,500,000 for each occurrence.  It also

22

contains an excess damage provision.

Section 2-9-111, as set forth in full in part I of this opinion, provides that a governmental entity is immune from suit, and also that an agent of a legislative body is immune from suit under described circumstances.

Section 2-9-112, -113, and -114, set forth other immunity provisions not pertinent here.

Part 2 - Comprehensive Insurance Plan

Section 2-9-201 and 202 in substance provide that the Department of Administration is to provide a comprehensive insurance plan for the State. It is authorized to purchase policies with cost apportionment among those involved.

Section 2-9-211 provides that all political subdivisions of the State may procure insurance separately, or jointly with other subdivisions, and may elect to use a deductible or self insurance plan, wholly or in part. In substance, this section grants to school districts an unlimited authority to purchase such insurance as the school district decides to be appropriate, both in terms of coverage and amount, and to insure by means of either regular insurance or some form of self insurance. In a continuing grant of this broad discretion, § 2-9-212 provides that political subdivisions, including school districts, may levy an annual property tax necessary to fund the premiums for insurance, the deductible insurance fund and self insurance reserve fund. We emphasize that the foregoing grant of discretion to the school districts is not limited by statute.

23

## Part 3 - Claims and Actions

Section 2-9-301 sets forth the procedure for filing claims against the State.

Section 2-9-304 provides that the governing body of each political subdivision, such as the board of trustees of the School District in the present case, after conferring with its legal counsel, may compromise and settle any claim subject to the terms of insurance, if any. The only limitation is that a settlement involving a self insurance reserve fund or deductible reserve fund must be approved by the district court.

Section 2-9-305 covers immunity, defense and indemnification of officers and employees. This section requires the public employer to pay any judgment for damages and provides that the employee is indemnified for such damages. It provides that recovery against the governmental entity is a bar to recovery against the employee. In a similar manner it provides that if the entity acknowledges that the conduct arose out of the course and scope of the employment, then the employee is immune from liability.

Section 2-9-314 requires court approval of attorney's fees.

Section 2-9-316 applies to a political subdivision such as the present School District. It provides that a final judgment shall be satisfied out of funds that may be available from the following:

    (1) insurance;
    (2) the general fund or any other funds generally available to the governing body;
    (3) a property tax, otherwise authorized by law,

collected by a special levy . . . except that such levy may not exceed 10 mills;

(4) proceeds from the sale of bonds issued by a county, city or school district for the purpose of deriving revenue for the payment of the judgment liability . . . Property taxes may be levied to amortize such bonds . . . provided the levy for payment of any such bonds or judgments may not exceed, in the aggregate, 10 mills annually.

The foregoing constitute the pertinent code sections as contained in the 1989 Montana Codes Annotated which we conclude must be construed together in order to answer the issue before us.

V

There are conflicting ideas which must be considered and balanced on the issue of whether the purchase of liability insurance waives the immunity of the School District. Prior to 1972 Montana had various types of immunity. In 1972 the people of Montana, by constitutional enactment, eliminated immunity on the part of political subdivisions. As described in the history of the 1972 Constitutional Convention, the basic thinking then was that a person should be compensated when injured by the government, and that such compensation should be similar to that received as a result of injury by a private party.

While we recognize that in 1972 the citizens of Montana expressed a desire to have unlimited liability, the same citizens changed their viewpoint by the 1974 referendum vote which authorized the Legislature to reinstate governmental immunity by a 2/3 vote of the Legislature. As appears from the foregoing history, legislation pertaining to both immunity and insurance has been adopted at many sessions since 1972.

25

We have pointed out that § 2-9-105, MCA, granting immunity from exemplary and punitive damages, has been carried forward without change for many years. Section 2-9-108, MCA, provides a limit of $750,000 for each claim. This theory has been in existence with different limits for many years. In connection with the limitations on the types and amounts of damages, the Legislature has found that the government and its political subdivisions cannot operate effectively if there is unlimited liability. Because the Legislature has concluded that unlimited liability would impede or cripple effectively the operation of government, the Legislature has eliminated certain types of damages and set a monetary limit for each claim. The Legislature has also eliminated liability on the part of an employee where there is responsibility on the part of the public employer.

When comparing our statutes to those of other states, we note that the Montana Legislature has not provided that the presence of insurance waives immunity, even though the insurance plan has been amended many times. On the other hand, the Legislature has not provided that authorized insurance shall _not_ apply where immunity is granted.

As previously mentioned, the Legislature has given broad and largely unlimited discretion to a political subdivision such as the present School District. This clearly suggests that the discretion as to the insurance coverage for personal injury, as involved in the present case, is given to the School District.

What is the impact upon the school district if the purchase

of insurance waives immunity? If there is unlimited waiver, certainly a substantial amount of school district time could be involved in litigation leaving too little time for normal school district operations. This impact would be minimized if the waiver of liability is limited to the dollar amount of insurance coverage. At that point the handling of the claim and the settlement of the claim or the conduct of litigation, would be handled by the insurance carrier. Such handling of the claim should take only a minimal amount of time for the trustees of the school district.

We come now to a critical part of the analysis. Is it improper to refuse to pay insurance proceeds to a party injured by the negligence of the school district, where insurance proceeds are available under a previously purchased insurance policy? If such a denial is made, then the party injured by the negligence of the school district has been denied compensation for injury and has been required to absorb all of the costs of such injury. If the school district is able to deny payment, then it has abdicated any responsibility for its own negligence. In addition, such a refusal to use insurance proceeds allows an insurance carrier to refuse to pay insurance benefits for which it has already received premium payment.

As we carefully weigh the various factors, we conclude that the purchase of liability insurance by the School District in the present case should waive its immunity to the extent of the insurance coverage. That conclusion leads to the next difficult aspect of this issue.

27

Even though this Court has appropriately balanced the various factors, should this Court be the entity to declare that such a purchase of liability insurance constitutes a waiver? Some supreme courts have taken the position that such a waiver properly is a matter for legislative decision.

We emphasize that Montana's statutory provisions are unique. We conclude that the Montana Legislature has reached the following conclusion: while a school district is granted immunity of various types, a school district still is granted authority to purchase insurance which may have the effect of waiver of immunity to the extent of the insurance proceeds. We do not find it necessary to imply a waiver, as the intention of the Legislature is clear. That intention is reemphasized by its authorization of tax levies sufficient to pay for insurance premiums. That intention is consistent with the legislative theory that a claim against a school district should be paid in a manner similar to payment required of a private party. We conclude that the Legislature has declared its intent to allow a school district to waive immunity to the extent of the insurance proceeds.

Our next question relates to the intention of this School District. The insurance policy purchased by the School District is good evidence of its intention. The policy demonstrates an intention on the part of the School District to provide insurance extending coverage for the type of personal injuries involved in the present case, and to provide by such insurance for the settlement and payment of claims found to be properly due. If that

were not the intention of the School District, the District readily could have excluded coverage under the policy for injuries of a type for which immunity is granted by statute. The foregoing conclusion is strengthened by the premium payment by the School District which apparently is sufficient in amount to provide the required coverage. We conclude that the School District has expressed its intention to waive immunity to the extent of insurance proceeds which are available.

Balancing all applicable factors, we hold that the purchase by the School District of liability insurance waives its immunity to the extent of the coverage granted by the pertinent insurance policy.

VI

We conclude with a final observation. Our holding is based upon our understanding of the intentions of the Montana Legislature and of the School District here involved. In the case of a school district, we have pointed out that the discretion is given to the school district with regard to the type and policy limits of insurance to be carried. As an example, following this opinion, if any of the over 500 school districts of Montana should conclude that they do not desire to have their insurance interpreted as we have set forth in this opinion, such a school district has the power given by the Legislature to change its insurance coverage, and ultimately, even to eliminate insurance coverage.

We remand to the District Court for further proceedings consistent with this opinion.

29

States waiving immunity include:

Cobbin v. City and County of Denver (Colo.App. 1987), 735 P.2d 214; Lee v. Colorado Dept. of Health (Colo. 1986), 718 P.2d 221; Evanston Ins. Co. v. City of Homestead (Fla. 1990), 563 So.2d 755; Atwater v. Broward County (Fla. 1990), 556 So.2d 1161; Logue v. Wright (Ga. 1990), 392 S.E.2d 235; Antiporek v. Village of Hillside (Ill. 1986), 499 N.E.2d 1307; Rodgers v. Martinsville School Corp. (Ind.Ct.App. 1988), 521 N.E.2d 1322; Green River Dist. Health Dept. v. Wigginton (Ky. 1989), 764 S.W.2d 475; Kee v. State Highway Admin. (Md.Ct.Spec.App. 1986), 513 A.2d 930; Chabot v. City of Sauk Rapids (Minn. 1988), 422 N.W.2d 708; Winters v. Lumley (Miss. 1990), 557 So.2d 1175; Wilkes v. Missouri Highway and Trans. Comm'n. (Mo. 1989), 762 S.W.2d 27; Beatty v. Charlotte-Mecklenburg Bd. of Educ. (N.C.Ct.App. 1990), 394 S.E.2d 242; Fastow v. Burleigh County Water Resource Dist. (N.D. 1987), 415 N.W.2d 505; Herweg v. Board of Educ. (Okla. 1983), 673 P.2d 154; Southern Pac. Trans. Co. v. School Dist. No. 40, McMinnville (Or. 1981), 635 P.2d 645; Gasper v. Freidel (S.D. 1990), 450 N.W.2d 226; Pickle v. Board of County Comm'r. (Wyo. 1988), 764 P.2d 262.


States not waiving immunity include:

St. Paul Fire & Marine Ins. Co. v. Nowlin (Ala. 1988), 542 So.2d 1190; Sadler v New Castle County (Del. 1987), 524 A.2d 18; Hinchey v. Ogden (Va. 1983), 307 S.E.2d 891.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

30

Chief Justice J. A. Turnage, specially concurring:

I concur in the majority Opinion and do so because the time has arrived for the legislature to revisit the legislation that is found in § 2-9-111, MCA, specifically (2), "a governmental entity is immune from suit for an act or omission of its legislative body or a member, officer or agent thereof."

This section was enacted in the 1977 legislative session and has not been amended since its enactment.

The decisions mentioned in the majority Opinion, Peterson, Miller, and Eccleston, were decided by this Court on May 16, 1989, December 13, 1989, and January 2, 1990, respectively. There has been no regular session of the legislature since those cases were decided by the Court. This Court's interpretation of § 2-9-111, MCA, has expanded immunity of a governmental entity.

The current 1991 legislative session is the first opportunity that people of the State of Montana have had to consider the legislation contained in § 2-9-111, MCA, in the light of this Court's interpretation in the cases mentioned. If the legislature determines that the language of the section is too broad, it has the opportunity to enact whatever provisions it deems appropriate.

For the first time this Court has concluded that, under the circumstances of this case, the purchase by a school district of insurance has waived its immunity. There are undoubtedly citizens of Montana who disagree strongly with that interpretation. As is apparent from the majority Opinion, this problem has been

31

considered throughout the United States with different conclusions in different states.

The dissent has leveled criticism at the majority of the Court for doing what I believe the Court is required to do in construing statutory provisions--follow the law. "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. This is the rule of law governing statutory construction, and it is an appropriate and proper rule. There is no place for individual preference or desire to become the rule of law when the Court interprets statutory language.

The result of the majority Opinion in this case is a waking example of a result that arrives at an unintended consequence. The majority of the Court has labored long and hard in an attempt to limit the application of this Opinion to school districts. Rest assured that such will not be the result of the decision. The rationale of the Opinion most certainly will be applied to all governmental entities, including the state and any political subdivision as well as the school districts.

The subject of tort liability of governmental entities, immunity from such liability and the relationship of insurance coverage is an area of unlimited legal complexity.

If such matters are left to the judicial system, they will be addressed by litigation on a case-by-case basis; a guaranty that

32

uncertainty and confusion will be the result. Montana's bench, bar and citizens will be placed in the position of not knowing what the rule of law may be in any one case until the final judgment of this Court has been rendered.

The legislature, not the courts, is the proper forum. It has at its disposal the adequate means to provide a deliberative process for study and, most importantly, to provide the opportunity for the public to participate and contribute their views at public hearings. This is how matters of serious public policy should, under our form of government, be resolved.

The citizens of this state are the ones that possess the power and the authority, speaking through their legislature, to make any corrections or amendments to existing law in the area covered by this opinion. It is only through that process that a careful, deliberative study of the problem can be accomplished, and the views and recommendations of citizens heard in an appropriate open public forum. The legislative process provides the opportunity for Montana to fully consider, debate and arrive at whatever answer is needed to the problem inherent in the legislation that now exists. The legislature is the proper forum to address this problem. A judicial resolution will only lead to further and more difficult litigation and uncertainty in the law.

J. A. Turnage
Chief Justice

33

Justice John C. Sheehy, concurring and dissenting:

I concur with the result of Part II of the majority opinion which holds that a school district insured for tort claims coverage has waived its alleged immunity from suit.  That result is to be applauded, for it is a crawl back from the harsh holdings of this Court in Eccleston, Peterson, and the like, which insulated sub-governments of the state from responsibility for even the most egregious of their torts.

At the same time, I dissent from the majority's reaffirmation in Part I, that Eccleston, Peterson, and their ilk continue in force if insurance is absent.  The resolute insistence of the majority that § 2-9-111, MCA, must be read broadly has denied many a tort-injured person from succor in our courts.  The judicial grant of legislative immunity down to the scrub persons mopping up the public halls is an elevation in status not reflected in the scrub persons' pay.  Under this holding, the king can do no wrong, and neither can his cooks in the kitchen, nor his ring-masters in the gym, cloaked as they are with legislative immunity.

From the reactions and comments of individual judges and members of the Bar, if I assess them correctly, Eccleston and Peterson, etc. are examples of judicial interpretation gone off the rails (see for example, the articles contained in the Montana Law Review, Constitutional Symposium '89, Vol. 51, No. 2, Summer 1990).  It is unfortunate that the majority do not use this case to get back on course.

The majority opinion seems to give weight to legislative "findings" made in the 1983 session (§ 1, Ch. 675, Laws of Montana

34

(1983)) and eventually codified as § 2-9-106, MCA. However, this Court rejected those findings in Pfost v. State (1985), 219 Mont. 206, 221; 713 P.2d 495, 504. We determined that the "findings" were baseless and speculative, and constituted little more than a plea by the legislature that it not be forced to pay its just obligations. Eventually, the legislative "findings" were repealed (§ 4, Ch. 22, Sp. Laws of Montana (June 1986)). Hence, the findings deserve no weight in any discussion of immunity.

The majority are in a box because they have interpreted legislative action under § 2-9-111, MCA, too broadly. It is as absurd to hold that a gym teacher doing his ordinary work is acting legislatively as it was in Eccleston, to hold that a janitor, who failed to broom off snow from gym steps had failed to perform a legislative function for his employer. All § 2-9-111, MCA, was ever intended to apply to was true legislative action.

Although I concur with the result of Part II of the majority opinion that immunity is waived in this case, I must comment that the judicial logic in finding a waiver is scant. The majority go from one extreme to the other. Having found in § 2-9-111, MCA, a tree of legislative immunity extending to all branches of sub-governments, the majority swing like Tarzan to the tree of waiver of immunity for all insured branches of sub-governments.

The tree of waiver is rooted on rocky ground. A good district judge in this case could not see it. The majority finds waiver because the legislature, at the same times as it was enacting immunity statutes around § 2-9-111, was also enacting statutes which allowed state sub-government to insure against their torts.

If the majority had been correct in their broad interpretation of the extent of legislative immunity under § 2-9-111, the sub-governments would have no need of insurance. They would be fully insulated. It would have been far more logical to have held that § 2-9-111 extends immunity only to true legislative action, and in line with that, the legislature had permitted insurance on the remaining risks so sub-governments would not have to "reallocate their resources." Obtaining insurance is very logical when the immunity of sub-governments is limited to legislative action; it is not logical if the immunity of sub-governments is total and insurance on their risks is unnecessary. This is not the first time I have pressed this point; I raised it in my dissent in Eccleston [240 Mont. at 61, 783 P.2d at 373 (Sheehy, J. dissenting)].

The majority have now brought us to a condition where insured school districts are liable for their torts (including legislative acts!) to the extent of their insurance, but uninsured school districts are not liable at all. One might surmise that each school district would now reject obtaining insurance, and save the cost while enjoying immunity. Not to worry. The officials of districts are not fools. They will obtain insurance if only to save their own skins from an unpredictable court. For all practical purposes, Eccleston, Peterson and company are dead.

Now the king can do no wrong except when he is insured. Long live the insured king! We will be in good hands with all state risks insured.

_John C. Sheehy_
Justice

36

Justice William E. Hunt, Sr. concurs in the foregoing dissent.

_William E Hunt_
Justice