JUSTICE TRIEWEILER
dissenting:
I dissent from every part of the majority opinion.
If the plaintiffs’ allegations are true, and for purposes of reviewing the District Court’s order dismissing their claim by summary judgment, we must presume they are, then their home and the property that it contained were totally destroyed due to repeated acts of negligence on the part of the Evergreen Volunteer Rural Fire Department.
Plaintiffs allege that at 2 p.m. on January 26,1987, the defendant fire department was called to suppress a fire at their home. It arrived and attempted to do so until about 4 p.m., when it left the premises over the plaintiffs’ protestations while fire and smoke were still present at the residence.
*306 At 6:16 p.m. the same day, defendant was called back to the residence to again suppress the fire. It attempted to do so until 11:15 p.m., at which time it once again left the premises, in spite of the fact that fire and smoke were still present.
At 12:15 a.m., the defendant was called back to the plaintiffs’ residence for a third time and remained until 2 a.m. on January 27, at which time they again left the scene. Plaintiffs allege that fire and smoke were still present when defendant left this third time.
Finally, at 6:45 a.m., the defendant was called back to the plaintiffs’ residence for a fourth time and remained at the residence until 9 a.m., by which time plaintiffs’ entire residence and all of its contents and furnishings were destroyed.
Plaintiffs allege damage to their property in the amount of $247,000. At the time of the fire, the defendant had in effect fire liability insurance coverage in the amount of $1 million.
Immunity protects someone who has committed a wrongful or illegal act at the expense of the victim of that wrongful act. Immunity should never be found unless established in a constitutional manner and made perfectly clear. Why any court would want to strain as hard as this Comb has to find immunity where it has not been clearly provided is beyond my comprehension.
The majority opinion violates all rules of statutory construction and common sense.
In his concurring opinion in Crowell v. School District No. 7 of Gallatin County (1991), 247 Mont. 38, 805 P.2d 522, Chief Justice J. A. Turnage correctly points out that:
“In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. This is the rule of law governing statutory construction, and it is an appropriate and proper rule. There is no place for individual preference or desire to become the rule of law when the Court interprets statutory language.
Crowell, 805 P.2d at 535.
This prior observation by the author of the majority opinion sets forth the proper role of this Court. However, the majority’s strained interpretation of § 7-33-2208, MCA (1987), in this case is the antithesis of Chief Justice Tumage’s prior admonition.
Title 7, Chapter 33, Part 21 authorizes the board of county commissioners to establish rural fire districts pursuant to a petition of *307 property owners within the district. There is no purpose ascribed to Part 21 other than to allow rural residents to join together to protect themselves against fire. There is no immunity provided in Part 21 for the fire districts that are formed.
Title 7, Chapter 33, Part 22 has a different purpose. It allows county commissioners to, on their own initiative, organize a volunteer rural fire control crew or county volunteer fire companies for the specified purpose of protecting undeveloped areas, such as range land, farm land, and forest resources which might not normally be included in rural fire districts.
Section 7-33-2208, MCA, allows the various fire departments and their heads to enter private property for the purpose of suppressing fires. Since that section is found in Part 22 and makes no reference to Part 21, the power authorized is presumably for the purpose of fighting fires in those areas that Part 22 was established to protect. Those would be range fires, farm fires, and fires involving forest resources where entry on private land might be necessary to protect other land.
Section 7-22-2208(2), MCA (1987), is very specific. It provides for immunity only for actions taken under that section. That section is found only in Part 22 and presumably pertains only to the fire fighting activities for which Part 22 was enacted. In order to expand § 7-22-2208(2), MCA (1987), to apply to rural fire districts which are established under Part 21, the majority had to apply imaginative, convoluted reasoning and insert into § 7-22-2208(2), MCA(1987), that which had not been inserted by the legislature.
The majority’s strained interpretation of § 7-22-2208(2), MCA (1987), violates even more fundamental rules of construction. Article II, Section 18, of the 1972 Montana Constitution, provides:
The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a % vote of each house of the legislature.
People in Montana who have been injured by the wrongful acts of their government or the agencies that it forms have a constitutional right to seek compensation. Any statute in derogation of a constitutional right should be strictly construed. 73 Am. Jur. 2d Statutes § 283 (1974). If the legislature has not clearly provided for immunity, this Court has no business creating immunity. B.M. v. State (1982), 200 Mont. 58, 649 P.2d 425.
*308 If anything can possibly be clear from the line of reasoning pursued by the majority in their opinion, it is that the legislature has not “clearly provided for immunity” for the Evergreen Volunteer Rural Fire Department. Instead, this Court has once again shown its preference for protecting the interests of government, rather than people, by creating that immunity.
Nor do I understand the majority’s attempt to distinguish the waiver of immunity that they found existed in Crowell from the situation in this case. If immunity exists, the rationale for finding a waiver of immunity by purchase of liability insurance is exactly the same. In arriving at its decision in Crowell, this Court quoted with approval from the following language of the Arizona Supreme Court in Smith Plumbing Company v. Aetna Casualty and Surety Company (1986), 149 Ariz. 524, 720 P.2d 499, 502:
The sovereign immunity doctrine originates in social policy designed to protect the State “from burdensome interference with the performance of its governmental functions ....” [Citation omitted.] The compensated surety of a sovereign does not perform the governmental functions that require protection; therefore, the protections a government needs to conduct its functions do not extend to the surety. Furthermore, to allow a compensated surety such as Aetna to assert its principal’s sovereign immunity and so avoid payment on a bond would be to provide a windfall to the surety. [Citations omitted.] If Aetna were allowed this defense, it would receive valuable consideration in the form of compensation- ... without assuming the risk of payment....
Crowell, 805 P.2d at 527.
After reviewing the statutes authorizing the purchase of insurance by governmental entities, this Court did not find any express waiver of immunity. On the contrary, it found a waiver on reasoning similar to that of the Arizona Supreme Court.
We come now to a critical part of the analysis. Is it improper to refuse to pay insurance proceeds to a party injured by the negligence of the school district, where insurance proceeds are available under a previously purchased insurance policy? If such a denial is made, then the party injured by the negligence of the school district has been denied compensation for injury and has been required to absorb all of the costs of such injury. If the school district is able to deny payment, then it has abdicated any responsibility for its own negligence. In addition, such a refusal to use insurance proceeds allows an insurance carrier to refuse to pay *309 insurance benefits for which it has already received premium payment.
As we carefully weigh the various factors, we conclude that the purchase of Lability insurance by the School District in the present case should waive its immunity to the extent of the insurance coverage.
Crowell, 805 P.2d at 533.
The exact same circumstances this Court relied on in arriving at its decision in Crowell exist in this case. The exact same rationale should, therefore, also be applied. The defendant in this case purchased liability insurance and paid premiums for coverage. To deny a claim by the plaintiffs based upon the fire district’s immunity allows the insurance carrier to refuse to pay insurance benefits for which it has already received premium payment. Therefore, purchase of the insurance coverage by the fire district should imply the same intention to waive immunity that was attributed to the school district in Crowell. There is no rational basis for distinguishing between the two entities.
The majority notes that the Montana Legislature negated the effect of Crowell when it amended § 2-9-111, MCA, in 1991. However, the only effect of that amendment is to provide that purchase of liability insurance does not waive the immunity provided for by that statute. That amendment had no effect on waiver of the immunity provided for in any other statute. Therefore, the amendment does not preclude the application of the Crowell rationale in this case.
Finally, I concur with Justice Gray’s dissent to the majority’s conclusion on Issue 3. The plaintiffs’ complaint that the defendant failed to properly equip its trucks and maintain its equipment, and failed to properly train its crew, alleged separate acts of negligence which occurred long before the fire on plaintiffs’ property and had nothing to do with the negligent manner in which the defendant failed to suppress that fire.
This case is another example of this Court’s propensity to defer to the interests of government when it comes into conflict with the interests of private citizens.
Our responsibility is not to protect the government or its agencies from its citizens. It is to protect private citizens from their government.
For these reasons, I dissent from the opinion of the majority.
JUSTICE HUNT concurs in the the foregoing concurrences and the dissent.